ROSE ELLEN FOX, APPELLANT, V. SCANDINAVIAN MUTUAL AID ASSOCIATION, APPELLANT.

FILED JANUARY 20, 1919. No. 20206.

1. **Trial:** CONFLICT OF EVIDENCE: SUBMISSION OF ISSUES. When, in a jury trial, the evidence is substantially conflicting upon the issues presented, so that different minds might reasonably reach different conclusions thereon, the cause must be submitted to the jury with proper instructions.

2. **Appeal:** EXCLUSION OF EVIDENCE. Offered evidence, indicated in the opinion, is *held* to have been erroneously excluded.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Thomas Lynch,* for appellant.

*J. L. McPheely, contra.*

SEDGWICK, J.

The court instructed the jury to find a verdict for the defendant. The question to this court is whether the evidence was in such a condition that the case should have been submitted to the jury. The defense was that the insured had made false answers in her application for insurance. The brief says that the burden of proof is on the defendant who asserts that, to prove that the answers were false, and that the insured knew what the questions were and the force and effect of the answers, and answered them falsely for the purpose of obtaining the insurance wrongfully. Perhaps the case was not tried strictly upon that theory. The evidence is in somewhat of a confused condition, but there is evidence that the first application was taken by one Sikes, as agent for the company; and that Sikes intended to and did impose upon the in-

sured; but there is no contention by the defendant that the policy should be avoided because of answers in the application taken by Sikes. Sikes was not called as a witness by the defendant, and we have not observed in the evidence any reason why he was not called. The defendant seeks to avoid the fact that Sikes deliberately planned to defraud the insured, and probably deceived the doctor who made the examination and led him to make a superficial examination. The evidence tends to show that Sikes did that.

Dr. Curry made the physician's examination for the company, and testified at large as a witness. He was asked, on the witness-stand, "Now, Doctor, you may state whether or not, aside from these several answers, you know whether or not you propounded the questions to the applicant at that time?" and answered, "I think I did. I always have; that was my custom to do so, and unless there happened to be a question I knew by just seeing the applicant, or something of that kind, I would always ask the question, these I could not see without asking." His whole evidence shows, as this answer shows, that he relied upon his custom in examining applicants for insurance, and had no distinct recollection himself of any question that he asked. It also shows that a great many things that he answered, or rather represented that the insured answered, were things that he "knew by just seeing the applicant, or something of that kind;" and he testified that he saw the applicant and made a thorough physical examination, and that she appeared to be in good health and appeared to be all right.

Proof was offered that about two years before that time this same doctor had examined this same applicant for insurance, and had, according to his custom, probably asked the questions that he thinks he now asked in this second examination. In the meantime, between the two examinations, the insured had been in a tuberculosis hospital. This evidence of the former ex-

amination was excluded, and it seems erroneously. It tends to throw light upon the accuracy of the doctor's recollection in regard to what questions he asked. He testified that he thought that the insured was a first class risk, and her general appearance was good, and that if she had had tuberculosis sufficient to go to a hospital her appearance would show it, and that she had no such appearance. He also said that he did not ask the questions when he could answer them himself by observation. He admits that he did not read the application to the insured, and that he did not instruct the applicant to read it.

The witness Jackson, who was in the next room at the time, with "no door * * * just a large opening," testified that he heard all that was going on, and stated positively that the doctor was not there fifteen minutes. The witness thought that it was not more than ten minutes. This is not denied by the doctor. If he examined the insured physically, as he said he did, it would have taken the whole of the fifteen minutes at least. Jackson also testified that the insured had returned from the hospital some time before, and appeared to be perfectly well, and considered herself perfectly well. There is no evidence contradicting this, and the defendant's own evidence supports this theory.

It does not seem to be clearly proved by this evidence that the doctor asked her the questions that he should have asked her and that he seems to suppose he did ask her, or that the insured knew that such questions were in this application covering a whole sheet, some of it of the very finest print, which was never read to her. He was not in her room altogether more than fifteen minutes during which he was making his observations and his physical investigation. It is not usual for an insurance company to send a physician to examine an applicant for insurance, who will form a custom of asking different questions from those in the written application and then writing down the answers to the

written questions in the application as though those were the ones that had been answered, and not suggest to the applicant to read the application, nor read it to the applicant himself, and then undertake to avoid the insurance because the answers written in the application were not correct.

This case ought to have been submitted to the jury, and there was error in excluding the evidence of the former examination by the doctor.

REVERSED.

CORNISH, J., dissents.

LETTON and ROSE, JJ., not sitting.