FRED MUHLBACH, APPELLEE, V. ILLINOIS BANKERS LIFE
ASSOCIATION, APPELLANT.

FILED MARCH 28, 1922. No. 21960.

1. Insurance: APPLICATION: EXPRESSION OF OPINION. The question
in the applicaton, "Have you, either of your grandparents, parents,
uncles, aunts, brothers or sisters, wife or children, been afflicted
with consumption, insanity or mental derangement, scrofula, or
any hereditary disease?" calls for an expression of opinion, judg-
ment and belief, and not for a statement of fact based on personal
knowledge.

2. ———: ———: MISREPRESENTATIONS. An untrue representation
made by the insured in his application, where the question elicit-
ing such statement calls for matters of opinion, judgment, or be-
lief, will not avoid a policy issued thereon, unless it is shown that
the misrepresentation was knowingly made with intent to deceive.

3. ———: ———: ———: QUESTION FOR JURY. Evidence ex-
amined, and *held* that whether the answer to the question in the
application was knowingly made with the intention to deceive
was a question for the jury to determine.

4. ———: ———: ———: DEFENSE. Section 3187, Rev. St. 1913,
does not prevent an insurance company from defending, in an
action brought to recover upon a policy, on the ground that fraudu-
lent representations were made by the insured in his application
for insurance, where such representations related to matters mate-
rial to the risk, and where if a true answer had been made no
contract of insurance would have been entered into. In such
case, the right of such defense is not defeated by a showing that
the false statement did not contribute to the loss.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Reversed.*

*F. B. Baylor* and *A. Moore Berry,* for appellant.

*Thomas Lynch, contra.*

Heard before LETTON, DEAN and DAY, JJ., BLACK-
LEDGE and TEWELL, District Judges.

DAY, J.
Action to recover on a life insurance policy, brought by

the beneficiary. Judgment for plaintiff. Defendant appeals.

On November 1, 1918, Nick Muhlbach, a young man not quite 21 years of age, made application to defendant company for a life insurance policy upon his life in the sum of $2,000, requesting therein that his father, the plaintiff, be named as beneficiary. The policy was issued November 19, 1918, and a few days later delivered to the insured. Early on the morning of January 21, 1919, the lifeless body of the insured, clad only in a union suit, was found lying at the base of a windmill about 200 yards distant from the house.

Two defenses were interposed: First, that the policy was obtained by fraud, in that the insured in answer to a question in his application stated that neither of his parents nor his sister had ever been afflicted with insanity, which answer was false and untrue, and known by the insured to be false and untrue at the time it was made; that the information sought to be elicited by the question was material to the risk, and that in issuing the policy the defendant company relied upon the answer given as being true. The second defense alleged that the insured came to his death by suicide, and under the terms of the policy under this contingency no liability existed. The circumstances leading up to his death were such that it was proper to leave to the determination of the jury the question whether he came to his death by suicide. The trial court submitted the issue of suicide to the jury in the form of a question to be answered yes or no, and reserved the issue of fraud for its own determination. The jury answered the question submitted to it in the negative. The court thereupon resolved the other issue against the defendant, and entered judgment on the verdict in favor of the plaintiff for the amount of the policy.

The principal contention of the defendant arises over the disposition of the issue of fraud. It is now urged that the court should have directed a verdict for the defendant

upon the evidence in support of that issue, and, failing to do this, the court should have at least submitted that issue to the jury. The argument in support of the defendant's contention discusses the question from various angles, which will appear in the course of the opinion. The application signed by the insured contained a stipulation, in substance, that the answers made by him in the application, as well as in the medical examination, were warranted to be full, complete and true, and that any untrue answers as to his personal or family history would forfeit any policy which might be issued thereon. The untrue answer upon which the defendant relies to defeat the policy is found in the medical examination, the question and answer being as follows: "Q. Have you, either of your grandparents, parents, uncles, aunts, brothers or sisters, wife or children, been afflicted with consumption, insanity or mental derangement, scrofula, or any hereditary disease? A. No." The testimony of the examining physician shows that he read this question to the insured and wrote down the answer as given by him. That the information sought to be elicited by the question was material to the risk is shown by undisputed testimony. The officers of the defendant company testified that under no circumstances would the company issue a policy upon the life of a person where his family history shows that both parents have been afflicted with insanity. It was shown beyond doubt that the father, mother, and sister of the insured had been afflicted with insanity. Although it is suggested in the argument that the answer to the question was a warranty as distinguished from a representation, we do not understand the defendant to place much reliance upon that position. This court has on several occasions announced the rule to be applied in determining whether answers in an application for life insurance are warranties or representations. In *Royal Neighbors of America v. Wallace,* 64 Neb. 330, in referring to certain questions in the applications, the court said:

"Many of them are of such a character that no person, however honest his intentions, could answer them with any degree of assurance that each of his answers was literally true. To hold that such questions and answers amount to warranties would be to impute bad faith to the association in pretending to enter into a contract of insurance with the insured which could become binding upon it by the merest chance."

In determining whether an answer to a question in an application for life insurance is to be regarded as a warranty or a representation, the court will take into consideration the situation of the parties, the subject-matter, the language employed, and will construe a statement made as a warranty only when it clearly appears that such was the intention of the contracting parties. This court has had occasion to consider cases wherein the questions and answers were analogous to the one now before us, and has held that they were representations, and not warranties. *Ætna Ins. Co. v. Simmons*, 49 Neb. 811; *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842; *Goff v. Supreme Lodge Royal Achates*, 90 Neb. 578. Under the principle announced in the foregoing cases, we think it must be held, regardless of the stipulation signed by the insured, that the answer made by him was a representation.

The first argument advanced by the defendant in support of its position that the court should have directed a verdict in its favor is based upon the theory that where an untrue answer is made in an application for insurance relating to a matter material to the risk, and which is relied upon by the insurer in issuing the policy, such misrepresentation avoids the policy, regardless of the good or bad faith of the applicant in making the answer. A number of authorities are cited supporting this view from other jurisdictions, but this court has consistently held to a line of demarcation between classes of representations in applications for insurance. Where the question in the application calls for an answer peculiarly within the knowledge

of the applicant, an untrue answer relating to a matter material to the risk and relied upon by the insurer will avoid the policy. In *Seal v. Farmers & Merchants Ins. Co.,* 59 Neb. 253, the application was for fire insurance, in which the insured falsely stated there were no liens upon the premises, and it was held the false statement avoided the policy. In *Swanback v. Sovereign Camp, W. O. W.,* 103 Neb. 34, the insured falsely stated that he had never been rejected by any other insurance company in applying for life insurance, and it was held that the false statement avoided the policy. It will be observed that the questions asked in these cases called for information peculiarly within the personal knowledge of the applicant. But where the question propounded to the applicant from its very nature calls for matters of judgment, opinion, or belief, the same rule does not and should not obtain. In such case an untrue statement made by the insured in his application will not avoid the policy, unless it is shown that the misrepresentations were knowingly made with intent to deceive the company. *Ætna Life Ins. Co. v. Rehlaender,* 68 Neb. 284; *Fox v. Scandinavian Mutual Aid Ass'n,* 104 Neb. 725. In *Royal Neighbors of America v. Wallace,* 73 Neb. 409, it is held:

"An incorrect or untrue answer in an application for life insurance in reference to matters of opinion or judgment will not avoid the policy if made in good faith and without intention to deceive."

"An untrue answer in an application for life insurance in regard to matters which are shown to be within the knowledge of the applicant and are material to the risk will avoid the policy."

In the foregoing cases the court was considering questions and answers which were similar to the one in the case at bar. Upon the authority of those cases we think it must be held that the answer to the question now under consideration was a mere expression of belief and so understood by the parties.

The defendant further urges that upon the entire testimony it has shown that the insured had knowledge that the answer he made in his application was untrue, and, therefore, the court should have directed a verdict in its favor, or at least submitted to the jury the question of whether the insured knew of the existence of insanity in his family. This involves an examination of the evidence.

The record shows without doubt that both of insured's parents were adjudged insane, and, strange as it may seem, both of them were committed to the hospital for the insane in this state on April 3, 1902. The mother never recovered, and died an inmate of that institution in February, 1906, and was buried in the hospital cemetery. The father after the expiration of ten weeks, was paroled and permitted to return to his home, being at that time in good mental and physical condition, and some months later he was discharged. The record further shows that Maymie, a sister of the insured, became insane in August, 1918, and on January 17, 1919, was committed to the hospital for the insane in this state. It appears that the three persons above named were committed to the hospital from Webster county, and that at the time the father and mother were adjudged insane the insured was four years old. At that time the sister Maymie was taken into the family of Dr. Wegmann, who resided in Webster county, where she remained until August, 1918. The insured and an older brother were taken into another family until the return of the father. When the father was paroled he returned to Webster county, and soon thereafter took his two sons to Hooker county, some 200 miles distant, where he established a new home. The insured continued to reside there until his death. It was shown by the older brother that the question of insanity of the parents was never mentioned in the home, and that none of the members of the family attended the mother's funeral. Dr. Wegmann testified that he first observed symptoms of mental failing in Maymie in August, 1918; that she was very nervous,

and appeared to be greatly exercised for fear her brothers might be killed in the war; that he thereupon wrote to the older brother calling his attention to her condition, and that he came at once to Webster county to talk the matter over; that it was then decided that it would be best that she be taken to Bailey's Sanitarium for treatment, and that the older brother and the insured each sent a check for $50 to aid in paying the expenses. The older brother testified that he told the insured that Dr. Wegmann had said that Maymie was very nervous, and that she ought to be taken to a sanitarium for rest. He also testified that he did not understand himself that the sanitarium was an institution for the treatment of mental diseases.

Under all of the facts and circumstances presented by the record, the court would not have been warranted in directing a verdict for the defendant; but we are inclined to the view that the court should have submitted to the jury the question as to whether the insured knew that his parents and sister had been afflicted with insanity.

The defendant also urges that the judgment contains no finding with respect to the issue of suicide or the issue of fraud, and for that reason the judgment must be reversed. As before intimated the question of suicide was submitted to the jury in the form of a question only, to be answered yes or no, and there was no general finding by the jury or in the judgment in favor of the plaintiff upon that issue, nor upon the issue of fraud. Of course, a judgment must be based upon findings or a verdict of a jury. The omission of findings was clearly an oversight. Were this the only question in the case, we think it might be corrected without a retrial. As it is not likely to occur again, it would seem that no further discussion is necessary.

The plaintiff seeks to justify the action of the trial court by applying the provisions of section 3187, Rev. St. 1913, to the facts of this case. It is urged that the untrue statements in the application did not contribute to the loss, and that, therefore, under the provisions of the statute above

referred to, the court was warranted in resolving the issue of fraud in favor of the plaintiff. We think the plaintiff's counsel have taken too narrow a view of this provision of the statute. This section reads as follows:

"No oral or written misrepresentation or warranty in the negotiation for a contract or policy of insurance by the insured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any policy of insurance sall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

It will be observed that this section of the statute is divided into two clauses. The first relates to matters of statements in the negotiations for the insurance, and it is declared that misrepresentations in procuring the insurance cannot be availed of as a defense, unless such misrepresentations deceived the company to its injury. The second clause of the section relates to breaches of conditions in the policy after it becomes effective, and it is declared that a breach of such conditions shall not avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss. It seems plain that the question now before us arises under the first clause of the section above quoted. The statute was never intended to deprive an insurance company of the defense of fraud in the negotiations for the contract of insurance. On the contrary, by its very terms it is said that the misrepresentations shall not avoid the policy unless the misrepresentations deceived the company to its injury. If, through the untrue statement of the insured, the defendant was induced to issue the policy, and thus become obligated under its contract, when it would not have done so had a truthful answer been made, it would seem clear that the

defendant was deceived to its injury, and the statute above quoted would not apply.

From what has been said, it follows that the judgment should be reversed and the cause remanded for further proceedings.

REVERSED.