## AMERICAN AUTOMOBILE INSURANCE COMPANY
### *v.* FIDELITY & CASUALTY COMPANY ET AL.
#### [No. 21, October Term, 1930.]

.Decided December 4th, 1930.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter V. Harrison* and *Robert France,* for the appellant.

*Rowland K. Adams* and *O. Bowie Duckett, Jr.,* with whom were *Adams & Hargest* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The single question for determination on this appeal, as presented by the action of the lower court on the prayers, is: Did the action of the assured in assuming liability in the manner shown by the record render the policy void and release the insurer? The facts which give rise to this question may be briefly but substantially stated as follows: Dr. Chester Riland was the owner of a Flint sedan, which on the night of December 9th-10th, 1926, was parked on the north side of Edmondson Avenue, Baltimore City, in front of the doctor's residence, with the parking lights burning. Dr. Riland had a policy of insurance in the Fidelity & Casualty Company of New York, one of the appellees, by which that company contracted to pay any loss, to the extent of the

policy, occasioned by damage through collision to his car. Lloyd N. Joyner at the time was the owner of a Buick sedan, which was insured by the American Automobile Insurance Company, the appellant. That policy of insurance provided: "American Automobile Insurance Company, in consideration of the premium and of the statements set forth in the schedule of statements, which the assured makes and warrants to be true by the acceptance of this policy, does hereby insure the assured named and described in said schedule for the term therein specified, against direct loss or expense arising or resulting from claims upon the assured for damages by reason of the ownership or maintenance of any automobile described in Statement IV of the schedule and the use thereof for the purposes described in Statement V of the schedule, * * * to an amount not exceeding the limits hereinafter stated, if such claims are made on account of * * * damage to or destruction of property of others, including the loss of use thereof, * * * arising from an accident occurring while this policy is in force." The contract further provides: "This policy is issued by the company subject to the following conditions, limitations and agreements which are a part of the policy, and to which assured, by the acceptance of this policy, agrees: * * * The assured shall not voluntarily assume any liability or interfere in any negotiations for settlement or in any legal proceeding or incur any expense or settle any claim, except at assured's own cost, without the written consent of the company previously given; the company reserves the right to settle or defend, as the company may elect, any such claim or suit brought against the assured." And further, under the head, Insolvency Endorsement: "In consideration of the premium rate at which this policy is written, and subject to all its other terms, conditions, limitations and agreements not inconsistent herewith, it is understood and agreed that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injuries or death sustained or loss occasioned within the provisions of this policy; and the prepayment of any judgment that may be recovered against the assured upon any claim

covered by this policy is not a condition precedent to any right of action against the company under this policy, but the company is bound to the extent of its liability under this policy to pay and satisfy such judgment; and an action may be maintained upon such judgment by the injured person, or his or her heirs or personal representatives, as the case may be, to enforce the liability of the company as in this policy set forth and limited." The amount of the insurance was $1,000, and the policy covered the period of one year, beginning at noon, March 6th, 1926.

On the night above stated, the car of Dr. Riland, being so parked, was run into and damaged by the automobile of Joyner while being driven by him, at about 12:15 a. m. The collision resulted in personal injuries to Joyner, as well as damage to Dr. Riland's car. After the accident Joyner was taken to a hospital for treatment, where he remained three or four days. There is testimony in the record that Joyner was either drunk or had been drinking at the time of the accident. Dr. Riland notified his insurer of the accident, and William Fink, its claim adjuster, was sent to the hospital to interview Joyner, between 8 and 9 o'clock a. m. on December 10th. Fink saw and talked to Joyner in the hospital, in the presence of a police officer and Dr. Murray, who was the father-in-law of Joyner. At that interview Joyner signed the following statement:

"I, Lloyd W. Joyner, 510 Saint George Road, Baltimore, Md., the undersigned, being of sound mind, agree to pay for the repairs to Dr. Chester Riland's Flint sedan that was damaged by being struck by my Buick sedan that was driven by me on December 10, 1926, at 12:15 a. m., while his car was parked on the north side of Edmondson Avenue at the curb in front of Dr. Chester Riland's residence, 2532 Edmondson Avenue. I also agree to pay him for loss of use of his car. I agree to pay all expenses for repairs and loss of use. I was at fault in this accident."

This statement was signed by Joyner, witnessed by Robert C. Shipley and Officer Brown, and acknowledged by Joyner as follows: "State of Maryland, City of Baltimore: On this

10th day of December, 1926, personally appeared before me, Lloyd W. Joyner, who read the above statement, signed it in the presence of myself and witnesses. William Fink, Notary Public. Seal." It appears from the testimony of some of the witnesses that this statement was read by Joyner; but at least it is uncontradicted that it was 'read to him by Dr. Murray. The Fidelity & Casualty Company of New York had the damaged car of Dr. Riland removed from the street to the Autogenous Company, where it was repaired, the cost of such repairs being $947.15. The appellant was notified of the accident by Joyner or his attorney; and on December 22nd, 1926, Leo A. Hughes, claims attorney for the appellant, wrote to Joyner, stating: "This is to advise you that the American Automobile Insurance Company disclaims liability to you on policy number 4191013 for any damages you may sustain by reason of an accident occurring on or about the 10th day of December, 1926, wherein the property of one Doctor Chester Riland was damaged." Subsequently, on January 19th, 1927, the appellees sued Joyner in the Baltimore City Court (of which suit the appellant was notified), and it resulted in a judgment against Joyner for $1,196.90. A writ of *fieri facias* was issued on that judgment, and returned *"nulla bona"*; whereupon, on February 19th, 1929, the present suit was instituted by the appellees against the appellant, and resulted in a verdict and judgment for the plaintiffs. From that judgment the present appeal is prosecuted.

The trial court refused the prayers of the defendant asking for an instructed verdict in its favor, and granted all of the prayers of the plaintiffs, among which was: "At the request of the plaintiffs, the court instructs the jury that the statement dated December 10th, 1926, signed by Lloyd N. Joyner, witnessed by Officer Brown and others, offered in evidence, is not a violation of the policy provision quoted in defendant's third plea sufficient to constitute a breach of the said policy and discharge the insurer from liability thereunder." The third plea referred to in that prayer alleged that the statement of Joyner breached the terms of the con-

tract, and relieved the appellant from any obligation under the policy on account of the alleged damage sustained.

It is apparent that, if there was error in granting the plaintiff's third prayer above quoted, there was also error in refusing the prayers of the defendant directing a verdict in its favor. The question therefore resolves itself into this: Is the legal proposition contained in the plaintiffs' third prayer, as granted by the court, correct? We do not think that it is.

It cannot now be questioned that in this state policies of insurance are construed as other contracts, and that, when the language employed by the parties is clear and free from ambiguity, it is to be given its usual and ordinary significance, thereby effectuating the intent of the parties as thus plainly expressed. It is not for the court to conclude the matter by determining whether or not a clear and plain provision of the contract, which is not contrary to or forbidden by law, is a proper or necessary part of the contract. That is a matter for the parties themselves. The law presumes the insurer and insured understood their contract as executed, and every intelligible condition embraced therein was inserted by design and intended to accomplish some material purpose; and it has been repeatedly held by this court that when the terms of a contract are clear and unambiguous, courts have no right to make new contracts for the parties, or ignore those already made by them, simply to avoid seeming hardships; and that insurance contracts are construed with the view of arriving at the intention of the parties as gathered from the whole instrument. *Joffe v. Niagara Fire Ins. Co.,* 116 Md. 155; *Miller v. Home Ins. Co.,* 127 Md. 140; *Frontier Mortgage Co. v. Heft,* 146 Md. 1.

The provision in the contract agreed to by the parties, and expressed in unmistakable terms, was that the assured should not voluntarily assume any liability, or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at his (the assured's) own cost, without the written consent of the company previously given. That was one of the conditions of the contract to which the assured agreed, not only by the acceptance of the

policy but by the following provision in the policy: "This policy is issued by the company subject to the following conditions, limitations and agreements which are a part of the policy, and to which assured, by the acceptance of this policy, agrees"; after which last quoted provision the condition as to the assured's assumption of liability is set forth. There can be no doubt that the violation of that condition contained in the policy is a breach of the contract.

It is contended by the appellees that in addition to the breach, in order to relieve the appellant from liability, it must appear that it was prejudiced by the breach. This contention we are unwilling to accept. While this identical question does not seem to have been the subject of decision by this court, and neither have we been able to find that it has been specifically passed upon in other jurisdictions, there are previous determinations of this court which, by analogy, are decisive of that question. In the case of *Miller v. Home Ins. Co. of N. Y., supra,* in which the act claimed to forfeit the policy of fire insurance was that the assured failed to keep books showing the current changes in the quantity and value of the stock caused by purchases, sales and shipments, as provided in the contract, Judge Urner, speaking for the court, said: "The inability of the appellant to produce such books, after the fire, is not due to their accidental loss or destruction, without default or neglect upon his part, as in *Scottish Ins. Co. v. Keene,* 85 Md. 263, but to the fact that no such records were ever in existence. It was his plainly defined duty, as we have found, to keep the set of books specified in the policy *during its continuance,* and no effort was made to fulfill this obligation. The appellant testified that he was not aware of such a requirement in the policy, but his neglect to become acquainted with the provisions of the insurance contract which he is seeking to enforce can not relieve him of the binding effect of its covenants, in the absence of any evidence tending to impeach its validity. *Bakhaus v. Caledonian Ins. Co.,* 112 Md. 695. The failure of the appellant to produce the books for which the policy provides being chargeable to his default in the performance of his contractual

duty to keep such records, there is no ground upon which we may properly refuse to enforce the covenant that the non-production of the books shall be a bar to recovery on the policy and shall render it null and void." In *Reynolds v. German American Ins. Co.*, 107 Md. 110, Chief Judge Boyd reviewed the Maryland authorities on this subject, and there said: "It may seem to be a hard rule to declare a policy forfeited for some act of omission or commission which in point of fact was not the cause of the fire, and actually did no injury to the insurer, but when parties enter into contracts which are not prohibited by law, and are declared by the courts to be reasonable regulations, upon what principle can a court revive a policy, which by its terms was null and void, simply because the insurer sustained no injury by reason of the insured's failure to do what is required of him? * * * This court has declared that there can be no recovery on insurance policies, which provided that they should be void under certain conditions, in a number of cases—amongst others, *Bowman v. Ins. Co.*, 40 Md. 631, where there was a judgment against the insured, which was not made known to the insurer: *Weaver's Case*, 70 Md. 536, where there was a mortgage; *Houghton's Case*, 92 Md. 68, where the insured had agreed in writing to sell the property; *Turnbull's Case*, 83 Md. 312, where gasoline was kept on the premises, although it was not the cause of the fire; and other instances might be cited. It was said by Judge McSherry in *Agric. Ins. Co. v. Hamilton*, 82 Md. 88, that in *Kelly's Case*, 32 Md. 421, and in *Weaver's Case*, 70 Md. 539, this court repudiated the principle of interpretation adopted in some cases that insurance contracts are to be construed more strongly against the underwriter; and adopted the sounder view that the intention of the parties, as gathered from the whole instrument, must prevail.' In this case there is no ambiguity, and there can be no question about what was intended by the parties. As we have seen, the weight of authority is not only to the effect that such a provision as that under consideration is valid, but it is said to be desirable. When the parties entered into the contract embraced in the policy, and expressly

agreed that the policy should be null and void, unless an inventory was taken as therein required, there could be no justification for the court setting aside the terms of the contract, because the insured, subsequent to the thirty days, did what he was required to do within that time, in order to keep the policy in force." The facts in that case were that the policy required an inventory to be made by the insured within thirty days after the execution of the contract, while the proof showed that the inventory was not made until fourteen days after the expiration of the thirty days provided in the policy.

In *Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271, a case involving a breach of a condition in the policy requiring cooperation on the part of the assured in defending or settling a claim, the opinion being by Judge Cardozo, it was said: "The plaintiff makes the point that the default should be condoned, since there is no evidence that cooperation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent." The Supreme Court of Canada, in the case of *Fidelity & Casualty Co. of N. Y. v. Marchand*, 13 B. R. C. 1135, where the provision of the policy on which the insurer based its disclaimer of liability was practically the same as the section here under consideration, said: "This transaction is within the letter of the conditions above mentioned as being a 'settlement' of the plaintiff's claim without the written consent of the company and it is within the object and the spirit of the conditions mentioned in that it was an act of a kind plainly within the contemplation of those conditions, namely, a collusive act, having

for its purpose to assist the recovery of reparation from the insurance company through the means of a judgment against the respondent. It is of no relevancy that the claim against the respondent was a valid one, and one which, in the ordinary course, if the conditions of the policy had been complied with, the appellant company would ultimately have been obliged to pay. The conditions are perfectly reasonable conditions framed with the object of protecting the insurance company against risk of collusion between the automobile owner and persons claiming damages for alleged torts. Such conditions would be robbed of nearly all practical value if in applying them the question of the validity of the professed claim must be investigated. For the purpose of protecting the company against collusion in regard to fabricated or unfounded claims, it is necessary that the conditions should exclude the possibility of such conduct in connection with any claim of any character." In the case of *N. J. Fidelity & Plate Glass Ins. Co. v. Love,* U. S. C. C. A., 4th Circ., 43 Fed. (2nd) 82, 86, in speaking of the breach of a condition contained in the policy requiring that the assured furnish the company with all process served upon him promptly, where more than seven months had elapsed after institution of the suit before the company was notified, and it was contended that the company was not relieved of liability because it had not been prejudiced, the court said: "Where, by the terms of the policy, a failure to comply is made an express cause for forfeiture, a showing of prejudice is not necessary. A compliance with the conditions of the contract within a reasonable time is indispensable to fix liability. The condition is a material and important part of the contract and should not be deliberately set aside as of no moment."

As above stated, and for the reasons given, it is not necessary for the court to find that a provision such as now under consideration is a necessary one in insurance policies; but if it were, it is not difficult to see that in many cases it would be essential to prevent collusion between the assured and those whom he had injured; and for this reason alone it would be a perfectly lawful and reasonable provision to insert in con-

tracts of insurance of this nature. It is certain that by signing the statement he did, Joyner assumed liability for damages arising out of the accident to Dr. Riland's car; which was a clear violation of the plain condition of his contract, and which must be held to relieve his insurer from liability, irrespective of whether or not the appellant was prejudiced by such assumption of liability on the part of Joyner. By his contract he agreed not to voluntarily assume any liability, and this was a condition upon which the liability of the appellant, according to the terms of the contract, depended.

There being error in granting the third prayer of the plaintiffs, and refusing the prayers of the defendant directing a verdict in its favor, the judgment must be reversed, without a new trial.

*Judgment reversed, without a new trial, with costs to the appellant.*