**OHIO CASUALTY CO. OF HAMILTON, OHIO, v. SWAN.**

No. 10680.

Circuit Court of Appeals, Eighth Circuit.

April 5, 1937.

Rehearing Denied April 30, 1937.

Albert L. Ramacciotti, of Omaha, Neb. (Charles S. Reed and Richard E. Robinson, both of Omaha, Neb., on the brief), for appellant.

720

Harvey Johnsen, of Omaha, Neb. (Dan Gross and Bryce Crawford, Jr., both of Omaha, Neb., on the brief), for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

July 19, 1931, Blanche Swan, appellee, and plaintiff below, was injured in an automobile accident on Lincoln Highway, about 4½ miles east of Dorchester, Neb. The automobile was owned by Lloyd V. Smith, and, at the time of the accident, was driven by Mrs. Gladys Stapp, who was appellee's daughter, and apparently the fiance of Smith. In the car also were William Swan, husband of appellee, and LeRoy Hoehn, eleven year old son of Mrs. Stapp. The occupants of the car were starting on a vacation trip to Estes Park, Colo., where they planned to take a cottage and do some fishing, etc. The car for some cause left the highway at the point above indicated, overturned, and finally landed in the ditch. The only person sustaining substantial injury was the appellee. Mrs. Swan brought suit for damages against Smith in the district court of Douglas county, Neb., and recovered judgment in the sum of $7,500, afterwards reduced by remittitur to $6,000. At the time of the accident the Smith automobile was covered by a liability policy under which appellant herein carried the risk, which was limited to $5,000 for bodily injury to any one person for any one . accident. After judgment as aforesaid in the state court, appellee caused a writ of execution to be issued against Smith upon which a nulla bona return was made. Thereupon, July 14, 1934, appellee, alleging her inability to collect from Smith because of his insolvency, brought suit against appellant in the district court of Douglas county, Neb., for the full amount of her judgment with interest and costs. The case was removed to the federal District Court for the District of Nebraska at Omaha, and therein, December 21, 1935, appellee recovered judgment in the sum of $5,685. This appeal followed.

In order that the issues presented may be better understood, a recital of the acts of the parties during a substantial period succeeding the accident are deemed necessary. July 23, 1931, Smith made a signed statement to D. F. Lynch, a representative of appellant, in which he said that the parties were making the trip as aforesaid with an arrangement to share the expenses; that he was driving the car at a rate of about 30 to 35 miles per hour. The center of the highway, particularly, was covered with gravel about 6 inches deep. That a Chevrolet coupé, apparently to avoid the gravel in the center of the highway, came toward him somewhat on Smith's side of the road. That to avoid a threatened collision, "I turned a little to the right, and the car then simply went off the shoulder into the ditch, overturning twice."

August 4, 1931, William Swan, husband of appellee, made a statement to Lynch containing the following:

"We were bound for Estes Park, Colorado, having arranged the trip beforehand. We lined up the trip and Mr. Smith asked us all to go in his car. There was no arrangement that we were to pay any of the car expense but we expected to share the cottage expense and the meals after getting out there. We left Omaha about 7 A. M. Sunday and Mrs. Stapp drove from Omaha to Lincoln, Mr. Smith taking the wheel there and driving till the accident happened. The day was clear and the road dry. It is graveled at the place where the accident happened and the road, Highway #38 runs straight I think north and south. Smith was driving between 35 and 40 m. p. h. over to the right of the center and was driving carefully. I had cautioned him going down to be careful about the gravel as my folks live down that way and I am acquainted with the road. We were in the back seat talking and looking at a road map and I looked up and saw a car coming toward us. I felt the car swerve to the right and the wheel then seemed to catch in the gravel and we went into the right ditch. * * * We do not know exactly what caused the accident but it seems to have been a combination of circumstances of the gravel, the car coming and getting over to the edge too far."

To this statement Gladys Stapp appended the following:

"I have read the report of my father, and believe it correct from my own knowledge of the accident."

October 15, 1931, Blanche Swan also made a statement:

"My daughter Mrs. Stapp and Mr. Smith wanted to take their vacation together and they asked Mr. Swan and myself to go along to chaperon them. Mr. Smith was to take his car as it was a coach where ours is a coupe. I don't know what arrangements were made for the expenses

either on the car or the rest. We left Omaha about 7 A. M. and my daughter drove to Lincoln and Mr. Smith took over the wheel there. She then got in the front with Mr. Smith and Mr. Swan and I in the rear seat. We also had LeRoy Hoehn in the back seat with us. Mr. Smith drove west out of Lincoln on the gravel road at an average rate of speed taking time to see the sights, I should judge the speed at 35 to 40 miles per hour. It was a bright day I think at least it was not raining and as Mr. Smith drove he was not driving recklessly and it was not necessary to protest his driving and I did not nor did anyone else. I have ridden with Mr. Smith on prior occasions around town and I think he is a careful driver."

November 4, 1931, Blanche Swan filed her first petition against Smith in the district court of Douglas county, Neb., in which she stated that Smith was the driver of the car and that "he, the said defendant, negligently and carelessly and while going at a high, reckless and terrific rate of speed, and at a rate of speed of at least forty to fifty miles, caused his car to swerve and drive directly into the ditch at the right hand or north side of the roadway causing the car to turn turtle twice, and causing the plaintiff to be severely injured as hereinafter stated, and that he was grossly negligent in so driving and operating said vehicle."

December 19, 1931, Mrs. Swan filed her first amended petition in which the same recital respecting the negligence of Smith was contained. Further investigation by representatives of appellant disclosed the falsity of the statements theretofore made in certain material respects, and, on April 29, 1932, Smith was confronted by this disclosure, and finally confessed that Mrs. Stapp was driving at the time of the accident at a speed not exceeding 30 or 35 miles per hour, and that she had been forced off the highway by a car approaching them at an excessive rate of speed. This confession was finally made in a sworn statement in which, among other things, Smith said:

"Both Mr. and Mrs. Swan had ridden with Mrs. Stapp on many occasions prior to this time and made no objections whatever to her operating the car on this trip, nor to the manner in which she drove."

This disclosure made necessary the filing of a second amended petition in the state court in which it was alleged that the automobile was being driven at the time of the accident by Mrs. Stapp, "acting as defendant's agent, and driving said automobile at his special instance and request." Then followed the same charges of negligence in driving on the part of Mrs. Stapp, as had been attributed to Smith in the two previous petitions. It was upon the issues framed upon this petition and the answer thereto that the judgment sued on was recovered in the state court. Immediately after learning of the false statement made by Smith, he was advised that the insurance company considered the policy voided by his breach of its condition respecting co-operation, and that the company would defend the suit in the state court only under that reservation. To this Smith agreed and the action was defended by counsel for appellant.

The policy in question contains the following pertinent provisions:

"The Assured, wherever referred to under Section II of this policy shall include, in addition to the named Assured, all members of the named Assured's household, or any other person riding in or legally operating any automobile covered by this policy as well as any person, firm or corporation legally responsible for the operation of said automobile; provided the coverage afforded under this paragraph to others than members of the named Assured's household shall not apply unless the said automobile is being used with the consent of the named Assured, or if such Assured is an individual, an adult member of such Assured's household other than a chauffeur or domestic servant.

"Upon the occurrence of any loss or accident covered under Section II hereof, and irrespective of whether any injury or damage is apparent at the time, the Assured shall give, as soon as practicable, written notice to the company at its office in Los Angeles, California, or to its authorized representative, with the fullest information obtainable at the time. If a claim is made on account of any such accident the Assured shall give like notice thereof after such claim is made, with full particulars: If thereafter any suit is brought against the Assured to enforce such claim, the Assured shall immediately forward to the Company every summons or other process as soon as the same shall have been served: Whenever requested by the Company, the Assured shall aid in effecting settlement, securing information and evidence, the at-

tendance of witnesses and in prosecuting appeals, and at all times render all possible co-operation and assistance; the Assured shall not voluntarily assume any liability or interfere in any negotiation for settlement or in any legal proceedings or incur any expense or settle any claim, except at Assured's own cost, without the written consent of the Company previously given: The Company reserves the right to settle or defend any such claim or suit brought against the Assured.

"No action shall lie against the Company to recover for any loss or expense under this policy unless brought after the amount of such claim for loss or expense shall have been rendered certain either by final judgment against the Assured after trial of the issues or by agreement between the parties with the written consent of the Company. It is a condition of this policy that the insolvency or bankruptcy of the named Assured shall not release the Company, and if recovery cannot be sustained the judgment creditor shall then have a right of action to recover against the Company the amount of said judgment to the same extent that the named Assured would then have had to recover had the named Assured paid the judgment, but in no event shall the Company's liability exceed the limits expressed in this policy or its obligations to the Assured."

At the close of all the evidence counsel for appellant moved the court for a directed verdict in its favor, principally upon the ground that it was established that the parties had entered into a scheme or device whereby they bound themselves and agreed to give false testimony and make false statements concerning said accident, which said scheme and device operated to vitiate the policy in its entirety. The district court took this motion under advisement until the following morning, at which time counsel for the insurance company asked leave to introduce additional testimony. This application was denied, as was the offer of proof which followed, and exceptions were preserved. The motion for a directed verdict was then overruled and the case submitted to the jury.

The specifications of error relied upon are:

1. The refusal of the court to sustain the motion for a directed verdict at the close of all the testimony.

2. The action of the court in denying defendant's application to withdraw its rest and its motion for a directed verdict in order that it might introduce further testimony.

3. The action of the court in refusing to accept defendant's offer of proof after its application to offer further testimony had been denied.

4. The refusal of the court to admit in evidence a deposition of Smith, offered as exhibit 22.

5. Refusal to submit to the jury the bearing of said deposition.

6. Refusal of the court to permit defendant's witness Lynch to testify as to conversations relative to the matter of Smith's having assumed responsibility for the accident, contrary to express provisions of the policy.

7. Refusal to submit the question of breach of the policy because of such assumption of responsibility and liability by Smith.

8. Excessive allowance of attorney's fees.

It must be conceded that Smith failed in his contract obligation to render to the insurance company all possible co-operation and assistance in the defense of the suit to recover damages against him, which would become the basis of this action against the company. Such a contract breach, there being no dispute as to the facts, is a matter of law, and, under ordinary conditions would avoid the policy and prevent recovery thereunder. General Casualty & Surety Co. v. Kierstead (C.C.A. 8) 67 F.(2d) 523, 525; United States Fidelity & Guaranty Co. v. Wyer (C.C.A. 10) 60 F.(2d) 856. This rule, which obtains generally in federal, and in most state jurisdictions, is modified in Nebraska by legislative act, section 44-322, Compiled Statutes of Nebraska, 1929, which reads:

"No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

It is held by the Supreme Court of Nebraska and by this court that these provisions are read into and constitute a part of insurance contracts. Muhlbach v. Illinois Bankers' Life Ass'n, 108 Neb. 146, 187 N.W. 787; Security State Bank v. Ætna Ins. Co., 106 Neb. 126, 183 N.W. 92; Mayfield v. North River Ins. Co., 122 Neb. 63, 239 N.W. 197; Westchester Fire Ins. Co. v. Norfolk Building & Loan Ass'n (C.C.A. 8) 14 F.(2d) 524, 525; George v. Ætna Casualty & Surety Co., 121 Neb. 647, 238 N.W. 36. If this statute be held to apply in this restricted sense to the situation presented in the case before us, the burden was cast upon appellant to establish that the breach complained of existed at the time of the loss or damage and contributed thereto. This question was submitted to the jury in a very explicit manner by the charge of the court. No exception was taken to that charge. The jury found for appellee; and, if nothing but alleged formal breaches of the insurance contract were involved, it would appear that appellant is foreclosed upon that issue.

In our opinion, however, the motion for a directed verdict presented to the court as matter of law an issue broader than a mere failure to co-operate as a breach of policy provisions. It charges that "the evidence definitely establishes that, at a time shortly after the occurrence of the accident referred to in the testimony and the pleadings, the plaintiff, together with Gladys Stapp, and William Swan, and each of them, by negotiations between them had, entered into a scheme or device whereby they bound themselves or agreed to give false testimony and make false statements, said scheme, plan or device being in violation of the terms of the policy, and such as to vitiate the policy in its entirety." It is true that, in addition to this substantial statement of collusion to perpetrate a fraud, emphasis was placed upon the resulting failure of Smith to receive a fair trial, and the impeachment of his testimony in the state court, all to the damage and injury of appellant; but this charge of collusion and fraud upon the uncontradicted testimony was presented as a matter of law for the ruling of the trial court.

A consideration of the undisputed evidence in this case can lead to but one conclusion, and that is that all the adults in the Smith car entered into a collusive plan to recover from appellant damages for the injury sustained by appellee in this accident. The original statements respecting the circumstances attending that occurrence have been set out and will not be repeated. The logical conclusion to be drawn from them is that a simple accident had taken place without apparent negligence or fault on the part of the driver of the car. But, to recover against an insured under this liability policy, gross negligence must be alleged and proved, hence the allegations of gross negligence in all the petitions filed in the state court. As a first step, and before it reached the attorneys for Mrs. Swan, it was arranged that Smith should be charged with driving. The purpose of this is apparent. Naturally they thought that the prospect of settlement or recovery from the insurance company would be increased if it were made to appear that the negligence was that of Smith instead of the plaintiff's daughter. A controversy between the mother and Smith would have greater appeal to company or jury than one between mother and daughter. The testimony of Mrs. Stapp in a deposition taken May 2, 1932, is quite pertinent on this point:

"Q. Do you know why it was that you said in your statement that you have referred to, that Smith drove this car when in fact you drove it? A. He told me to say that.

"Q. Smith told you? A. Yes.

"Q. Where was he when he told you to say that? A. In Dorchester.

"Q. When did he tell you that? A. No, I will take that back, the first time he told me was in Omaha, I thought it was in Dorchester, but it was when we got back.

"Q. Did he say why he told you that? A. Well, he said that he thought that he would get into trouble with the insurance company, or something of the kind.

"Q. And you agreed with him that you would tell that story, and for one reason or another that you would say he drove, whereas you knew he did not drive at the time of the accident? A. I agreed to do as he asked me to.

"Q. The purpose, of course, was to compel or induce the insurance company to do something in behalf of your mother. Is that right? A. It was his policy, it was to protect him and the occupants of the car.

"Q. To protect him from an obligation to your mother and to make the insurance company pay it by telling this untruth, is that right?

"Mr. Gross: I advise the witness she need not answer that question on the ground that she might incriminate herself.

"Mr. Ramacciotti: If you want to object for that reason, I will withdraw the question and will not insist upon an answer if the objection is that the witness might incriminate herself.

"Notary Public: Is that your reason for refusing to answer, Mrs. Stapp, that you might incriminate yourself?

"Witness: Yes.

"Q. Do you know the reason why you told the story first that Smith was driving? A. Because he asked me to.

"Q. Do you know why he asked you to? Did he tell you why? A. He said at the time, he said if anything is said, 'I was driving the car.'

"Q. He told your stepfather and your mother? A. All of us.

"Q. And you all agreed to tell the story because of his request. A. Yes."

Again it is to be noted that, from the outset, recovery from the insurance company was uppermost in Smith's mind. Dr. Coakley, a specialist living in Omaha, attended LeRoy Hoehn, who sustained a minor injury. Hoehn was brought to him by Smith, who "told me that my fee for services would be taken care of by the insurance company and to render my statement to the insurance company." With commendable frankness counsel for appellee, in argument and brief, "do not condone the false statements made by plaintiff and Smith." They say:

"It is not clear whether Smith was attempting to assist the parties or to involve them in the difficulties with the insurance company to which his suggestion subsequently gave rise, but perhaps it may be assumed he was only trying to help them."

■ It is not to be inferred that co-operation in the policy sense requires that the insured should combine with the insurer to present an aggressive or sham defense; it does mean, however, "that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N. E. 367, 369, 72 A.L.R. 1443; General Casualty Co. v. Kierstead (C.C.A. 8) 67 F. (2d) 523, 525; Ocean Accident & Guarantee Corporation v. Lucas (C.C.A. 6) 74 F.

(2d) 115, 117, 98 A.L.R. 1461; Buffalo v. United States Fidelity & Guaranty Co. (C.C.A. 10) 84 F.(2d) 883.

■ Although sufficiently broad in its terms to include breaches of policy provisions generally, it is well-known that the purpose of the Nebraska statute, and those of similar import, was to protect against such failure to observe policy requirements as obviously, under special circumstances, could not cause loss to the insurer. Among these are commonly found failures to give notice within the time prescribed, where the evidence discloses that such failure could result in no damage to the insurer, and lapses of this general nature. In cases involving an intimate relationship between the parties to the suit, the courts uniformly have exercised a close scrutiny to protect against collusion and fraud.

In Buckner v. Buckner, 207 Wis. 303, 241 N.W. 342, 344, quoting from American Automobile Insurance Company v. Fidelity & Casualty Co. of New York, 159 Md. 631, 152 A. 523, the court said:

"For the purpose of protecting the company against collusion in regard to fabricated or unfounded claims, it is necessary that the conditions should exclude the possibility of such conduct in connection with any claim of any character."

And says further:

"This is especially true in cases where liability is claimed to exist in favor of one member of a family against another member of the family, the ultimate loss to be borne by the insurer."

Alertness to prevent collusion between the insured and a friendly claimant is stressed in Watkins v. Watkins, 210 Wis. 606, 245 N.W. 695, and Storer v. Ocean Accident & Guarantee Corporation Ltd. (C.C.A.) 80 F.(2d) 470. A Nebraska Statute (Comp.St.Supp. 1931, § 39-1129) provides that "the owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." Commenting upon this statute, the Supreme Court of Nebraska, in Belik v. Warsocki, 126 Neb. 560, 565, 253 N.W. 689, 692, observing that great care should be exercised

by the reviewing court in weighing and analyzing the evidence, said:

"Owing to the degree of negligence necessary, the guest statute presents cases somewhat new in character. Almost invariably the occupants of the car are either relatives or intimate friends, and consequently friendly to recovery. Especially is this true in cases where an insurance company will be the one ultimately liable. Oftentimes even the defendant seems willing to stultify himself by confessing to wrongdoing that the plaintiff might prevail."

The Supreme Court of Nebraska in construing the first clause of section 44-322 said:

"The statute was never intended to deprive an insurance company of the defense of fraud in the negotiations for the contract of insurance." Muhlbach v. Illinois Bankers' Life Ass'n, 108 Neb. 146, 153, 187 N.W. 787, 790.

It would seem equally clear that the Legislature by any part of this statute never intended to deprive an insurance company of the defense of fraud in any relationship to the contract of insurance. "As a general rule everyone who engages in a fraudulent scheme forfeits all right of protection either at law or in equity." 13 R.C.L. § 145, p. 396. Compare Allegretto v. Oregon Automobile Ins. Co., 140 Or. 538, 13 P.(2d) 647. In George v. Ætna Casualty & Surety Co., 121 Neb. 647, 650, 238 N.W. 36, 40, the breach complained of was a failure to give immediate notice of accident. The court, after stating that a lack of literal compliance with policy provisions is insufficient to avoid liability, where, as in that case it does not contribute to the loss, quoted approvingly this significant language from Employers' Liability Assurance Corporation v. Roehm, 99 Ohio St. 343, 124 N.E. 223, 7 A.L.R. 182.

"In the case at bar there is no charge of fraud or claim of bad faith, nor can there be any pretense that the delay in giving notice was prejudicial to the insurer."

Whatever may be the general effect of this section of the Nebraska statutes upon breaches of policy contract provisions, we are convinced that it was not intended to deprive insurance companies of their defense in cases involving fraud and lack of good faith on the part of the insured and those in collusion with him. We are confident the Supreme Court of Nebraska

will so hold when a case presenting that clear issue comes before it.

It must not be understood that it is intended by this discussion to remove the co-operation provision of the policy entirely from the modifying effect of section 44-322 of the Nebraska statutes. We hold only that, in the instant case, the collusion and fraud shown by the record and challenged by the motion for a directed verdict served to vitiate the policy contract and to preclude recovery against this appellant. This conclusion involves no challenge to the judgment procured in the state court. In the state of that record, in so far as shown here, a judgment might well have been recovered against Smith, whose acts conceivably enlisted no sympathy from the jurors. But it does not follow, under the situation here presented, that a judgment against appellant must result as of course. We think the issue of fraud was sufficiently made to appear in the pleadings and evidence and urged in the motion for a directed verdict, and that that motion should have been sustained. In this view, it is deemed unnecessary to consider the remaining specifications of error urged by appellant, except to suggest that no error is perceived in the refusal of the court to admit in evidence the deposition of Smith offered as Exhibit 22. It follows that the judgment must be reversed and the case remanded for further proceedings not inconsistent with the views herein expressed. It is so ordered.

STONE, Circuit Judge, concurs in the result.