RUTH QUISENBERRY, APPELLEE, V. NATIONAL FIRE INSURANCE COMPANY, APPELLANT.

273 N. W. 197

FILED MAY 14, 1937. No. 29973.

*Wells, Martin, Lane & Offutt,* for appellant.

*Benjamin S. Baker* and *Edward Shafton, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

Plaintiff was the owner of certain residential property in an addition known as Bensonvale adjacent to the city of Omaha. Upon the property was a dwelling-house and the Nebraska Savings & Loan Association held a mortgage on the property. Plaintiff had carried two policies of insurance on the dwelling, one in the sum of $1,800 issued by the Automobile Insurance Company and another issued by the defendant National Fire Insurance Company in the sum of $1,000. Both policies were held by the Savings & Loan Association in connection with its mortgage on the property. The expiration date of the policy in the National Fire Insurance Company was in August, 1934, and in July the Savings & Loan Association notified plaintiff of the approaching expiration and requested the privilege of renewing the policy. Plaintiff did not communicate with the Savings & Loan Association but went to the office of the agent of the Automobile Insurance Company and procured additional insurance in the amount of $1,400, thereby making the total insurance with that company $3,200. Plaintiff did not communicate or have any transaction with the defendant National Fire Insurance Company, but the officers of the Savings & Loan Association, not at the time knowing of the additional insurance, procured a new policy in the defendant National Fire Insurance Company in the sum of $1,000 supposedly to take the place of the one just expiring. This policy is the one in suit and contains this provision in a rider attached thereto: "It is a condition of this insurance that * * * permission is hereby given for other insurance, but the total amount of insurance per-

mitted, including this policy, shall in no case be in excess of the following stipulated amounts, anything in the policy or the policy form to the contrary notwithstanding: Item No. 1. $2,800." The provision quoted gives rise to this lawsuit.

It is undisputed that at the time of issuance of this policy or until after the loss neither the defendant National Fire Insurance Company nor the Nebraska Savings & Loan Association knew of the increased amount of insurance that had been procured in the Automobile Insurance Company. The plaintiff and the agent of the Automobile Insurance Company both failed to notify the Savings & Loan Association thereof. This was the situation at the time the dwelling-house was totally destroyed by fire in December, 1934. Thereupon the Savings & Loan Association was informed of the increase of insurance made by a rider to be attached to the policy of the Automobile Insurance Company and that company paid its obligation to the plaintiff and the mortgagee. The defendant National Fire Insurance Company declined to pay, and this suit resulted in which the defense, with others, is urged that the policy of this defendant contained the provision limiting the total amount of insurance that could be carried on the property to the sum of $2,800, that such provision was violated at the time of the issuance and delivery of the policy, which condition still existed at the time of the loss, and that therefore the policy in suit became void or voidable, and that the defendant is not liable thereon and was entitled at the time to a directed verdict in its favor.

There are other defenses and errors urged which have some merit, but in the view we take of the case it will be unnecessary to discuss them because the proposition above indicated controls the disposition of the case.

The plaintiff maintains that the above quoted policy provision limiting the total amount of insurance is not valid in view of the provisions of section 44-322, Comp. St. 1929, did not operate to relieve the defendant from liability inasmuch as there was no misrepresentation which

deceived the company to its injury, and that the breach of condition against greater insurance did not contribute to the loss. It may be conceded that there was no affirmative misrepresentation by anybody. In issuing this policy the defendant transacted the business with the Nebraska Savings & Loan Association and neither of them at the time, nor until after the loss, knew of the increased insurance then existing which made the total amount then in force with the Automobile Insurance Company $3,200. Some questions are raised respecting the applicability of the valued policy law, Comp. St. 1929, sec. 44-344, but these are considered only as incidental to the main issue in the case, the scope and provisions of the valued policy law having been well covered and adjudicated in this state.

The question in this case then is whether the policy provision limiting the total amount of insurance to $2,800 is under the circumstances of this case effective to relieve the defendant from liability upon its policy, it being undisputed that at the time the policy was issued and continuously until after the loss there was in force other valid insurance on the property to the amount of $3,200. It will be seen that, if the policy provision is not effective, then there was in force upon the property insurance in the two companies to the amount of $4,200, which is materially different from the total of $2,800 to which the defendant sought to limit the same by the provisions of its policy.

The appellee to sustain her position relies upon the provisions of section 44-322, Comp. St. 1929, and the case of *Newman v. National Union Fire Ins. Co.*, 122 Neb. 94, 239 N. W. 464, as a construction of the statute controlling in this case, and urges that, inasmuch as the additional insurance in no manner contributed to the loss, the statutory provisions apply in full force to the present situation. The provisions of that section of the statute are:

"No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching unless

such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

An examination of the *Newman* case discloses that it involves questions relative to the effect of certain foreclosure proceedings and an assignment of the policy after loss had occurred; and although there are references to procurement of other insurance without consent of the insured, the decision seems to be placed on other grounds respecting the assignment, foreclosure and transfer of title. It is at least clear that whatever happened therein that is complained of in reference to other insurance took place after the issuance of the policy in suit. We do not consider the case authority for plaintiff's contention herein. In the instant case the situation was fixed, but wholly unknown to the insurer, at the time of delivery of its policy. It is true that there is neither claim nor intimation in the case that the plaintiff caused the fire. It may be that in reference to the other insurance, as stated in plaintiff's brief, the only manner by which defendant could prove that said breach contributed to the loss would be to show that plaintiff, appellee, secured the policy in question, caused the fire and thereby defrauded the defendant; and that such would be the rule if and when that stage in the proceedings should be reached.

In considering this question there are other statutory provisions to which reference should be made. They are the valued policy law, to which reference has already been made and which is section 44-344, Comp. St. 1929, as follows:

"Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of

the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of the loss and measure of damages."

There are also in the same statute sections 44-701 and 44-702 which should be noticed. Section 44-701 provides as follows:

"It shall be unlawful for any insurance company or any agent to knowingly issue any fire insurance policy upon property within this state for an amount which, with any existing insurance, exceeds the fair value of the property or of the interest of the insured therein."

Section 44-702 is:

"It shall be unlawful for any party having an insurable interest in property located in this state to knowingly procure any fire insurance policy upon his interest in such property, for an amount in excess of the fair value of his interest in the property, or for an amount which, with any existing insurance thereon, exceeds the fair value of his interest in the property."

Section 44-703 provides the following:

"Any insurer who knowingly makes insurance on any building or property or interest therein against loss or damage by fire in excess of the insurable value thereof, shall be fined in a sum not less than fifty dollars nor more than one hundred dollars. Any agent who knowingly effects insurance on a building or property or interest therein in excess of the insurable value thereof, shall be fined in a sum not less than fifteen nor more than twenty-five dollars."

Under the valued policy law it has been held by this court that the statute fixes the worth of the property insured conclusively at the valuation written in the contract of insurance and in case of total loss that sum is the measure of recovery. *Fadanelli v. National Security Fire Ins. Co.*, 113 Neb. 830, 205 N. W. 642.

Thus we find the insurer surrounded in one sector by the provision which upon total loss fixes the amount stated in

the policy conclusively as the amount it must pay, in another that it is made unlawful on the part of both the insurer and its agent to issue a policy for an amount which exceeds the fair value of the property or the interest of the insured therein, and in another where penalties are inflicted against any insurer and any agent who violates such provision, and in another by a provision that it is unlawful for an owner to procure insurance for an amount in excess of the value of his interest in the property, and, finally, the remaining sector, as to which it is contended that the insurer cannot contract as against over-insurance to limit the extent of the loss in which it contracts to participate or that, if it does so, then its only defense would be the ability to prove that the insured caused the fire. It seems to the writer that to so hold would broaden the application of the statute, section 44-322, in itself a wholly desirable and beneficial legislative provision, far beyond its true scope and intent. In the case of *Muhlbach v. Illinois Bankers Life Ass'n,* 108 Neb. 146, 187 N. W. 787, it is observed that this section of the statute is divided into two clauses, the first one relative to matters involved in the negotiations for insurance, and the second relating to breaches of conditions in the policy after it becomes effective, and it is there said: "If, through the untrue statement of the insured, the defendant was induced to issue the policy, and thus become obligated under its contract, when it would not have done so had a truthful answer been made, it would seem clear that the defendant was deceived to its injury, and the statute above quoted would not apply."

The statutory provisions to which reference has been made should be construed in *pari materia.* It seems elementary that the insurer should have the right of contract at the outset to define and limit the amount of insurance which it will agree to carry upon any risk. This right, it seems, would necessarily include the right to likewise limit the liability upon any risk in which it agreed to participate with other concurrent insurance. This the defendant herein undertook to do, and although there was no misrepresenta-

tion knowingly made or intention to deceive, the facts as presented to the defendant did, if this policy is allowed to stand, mislead and deceive the defendant to its injury by making it participate in a total of $4,200 insurance when it had specifically contracted that it should not participate in insurance to an excess of $2,800. That the situation so presented was by mistake rather than from an active fraudulent intent does not matter. *Meyers v. German Fire Ins. Co.*, 101 Neb. 855, 166 N. W. 247; *Seal v. Farmers & Merchants Ins. Co.*, 59 Neb. 253, 80 N. W. 807.

A policy provision is valid suspending coverage on an automobile while the car is being rented or leased. *Borsky v. National Fire Ins. Co.*, 119 Neb. 178, 227 N. W. 821. The provision is also valid which suspends coverage while the insured is in default for a payment of premium. *Novak v. LaFayette Life Ins. Co.*, 106 Neb. 417, 184 N. W. 64.

Over-insurance is a matter which has been of much concern not only to the insuring public but to legislatures and to courts. It was to aid in preventing such situations that the valued policy law was enacted. The right to contract and to provide limitations in a policy against other insurance has been universally recognized. Over-insurance of property increases the moral hazard and its inevitable tendency is to increase the rates imposed for insurance upon those who do not over-insure their property. It is an evil against which the companies have a right to protect themselves, and in which the insuring public has a very substantial interest. To illustrate: A building worth, say, $3,000, is insured for $2,800, additional insurance is taken out in the amount of $1,000 contrary to the policy provisions. In case of loss, if both parties are required to pay, the insured has made a substantial profit.

Our statutory provisions were enacted for the purpose of preventing over-insurance of property. Warned by the provisions of the valued policy law, by the provisions making it illegal to either issue or receive policies in excess of the real value of the property, confronted with the necessity of paying in case of total loss whatever sum is

named in the policy, the defendant, on the very threshold of the negotiations which with subsequent transactions have led to this lawsuit, declined to enter into a contract of insurance respecting this property which involved a greater sum or value than $2,800, and a provision was inserted in this policy to the effect that it was a condition of this insurance that there should not be total insurance on the property in excess of $2,800. That provision was violated at the very time the policy came into existence, or before it came into existence, and we hold that conformity to such provision in this policy was a condition precedent to the taking effect of the policy in suit, that it never became in force as a policy of insurance, and consequently there is no liability against the defendant in this case except for a return of the premium paid.

The plaintiff has received from the Automobile Insurance Company compensation in an amount greater than that in which defendant agreed to participate, and the mortgagee to whom, as interest may appear, loss under this policy is made payable is not a party to this case.

The case is remanded for further proceedings in accordance with this opinion.

REVERSED.