J. HYMAN MEWBORN v. THE EMPLOYERS' LIABILITY ASSURANCE
CORPORATION, LTD., AND L. J. MEWBORN, ADMINISTRATOR OF N.
PALMER MEWBORN, JR.

(Filed 30 December, 1929.)

**1. Insurance J d—Condition that notice of accident be given immediately
to the insurer is construed to mean with reasonable promptness.**

The condition in a policy of accident insurance that notice of an acci-
dent covered by the policy be given the insurer immediately in writing
will be construed to mean with reasonable promptness, or to impose upon
the insured the duty to exercise reasonable diligence in giving the re-
quired notice, measured by his ability and opportunity to act in the
premises, and a forfeiture of the policy for failure to comply strictly
with such provision will not be declared where the notice given complies
substantially with the spirit and meaning of the contract.

**2. Same — Whether insured gave notice of accident with reasonable
promptness held question for the jury.**

Where notice of an accident covered by the policy of insurance is given
the insurer two months and a half after the accident and a month and four
days after the extent of the injury is known, and there is evidence tend-
ing to show that the mind of the insured was so affected by the accident
that he was incapable of giving notice, and that the notice was given in
time for the insurer to protect itself so that neither the risk nor the
rights of the insurer were jeopardized by the delay: *Held*, the question
of whether the notice given was a sufficient compliance with the condi-
tion of the policy requiring immediate written notice of an accident was
for the determination of the jury under the facts and circumstances of
the case.

BROGDEN, J., dissents.

APPEAL by defendant, Assurance Corporation, from *Nunn, J.,* at
June Term, 1929, of LENOIR.

Civil action to recover on a personal-injury and property-damage
contract of insurance.

By the terms of the policy in suit, the defendant agreed to indemnify
the plaintiff, owner of the 1923 model Ford roadster covered by the
contract of insurance, against (1) loss from legal liability for damages
on account of bodily injuries, including death resulting therefrom, acci-
dentally sustained by any person, to the extent of $5,000 for one person,
and $10,000 for more than one, and (2) loss from legal liability for
damages on account of the accidental injury to or destruction of prop-
erty covered by the policy, including the resultant loss of use of such
property, subject, among other things, to the following stipulation:

"Notice.—Condition C. Upon the occurrence of an accident covered
by this policy, the assured shall give immediate written notice thereof to

the corporation or its duly authorized agent. The assured shall give like notice with full particulars of any claim made on account of any such accident. If any suit or other proceeding mentioned in Agreement III is instituted against the assured on account of any such accident, the assured shall immediately forward to the corporation or its duly authorized agent every notice, summons, or other process served upon the assured."

The policy of insurance was in force on 28 June, 1925, when plaintiff's car, operated by his adopted son and in which his nephew, N. Palmer Mewborn, Jr., was riding, collided with another car on the Kinston-Snow Hill highway, resulting in serious bodily injury to plaintiff's said nephew, from which he died 8 August, 1925.

Written notice of the accident was given to the defendant on 12 September following. Defendant denied liability because of plaintiff's delay in giving notice.

Thereafter, at the November Term, 1927, Lenoir Superior Court, the administratrix of N. Palmer Mewborn, Jr., deceased, in an action for wrongful death, recovered a judgment against the plaintiff in the sum of $10,000. The defendant had due notice of this suit, which was instituted 26 June, 1926, but declined to defend it, or to take any part in its defense, preferring to rely upon its alleged nonliability under the policy because of plaintiff's failure to give immediate notice of the injury.

In excuse of the delay, plaintiff offered the testimony of his physician, partner, and others, tending to show that he was so shocked and overcome by the act of his son-in-law, which caused his nephew to linger in a desperate condition from 28 June till his death on 8 August, as to affect his mental processes and rendered him incapable of "originating an idea or discovering an old one," and unfit to attend to business matters up to the time notice was given to the defendant by plaintiff's wife on 12 September, 1925. He was "much depressed and mentally affected, very much so. There was a very decided change in the man all during that time and for a good while afterwards."

Dr. J. M. Parrott testified in substance as follows: Mr. Mewborn is a man of unusually fine sensibility and high sense of honor. He was profoundly impressed, and during that time was not competent to originate an idea without outside suggestion, though he was entirely competent to transact his business if matters were called to his attention. I do not believe that he would have thought about a financial matter of this character under the circumstances. If his farming operations and other business were called to his attention, he could no doubt have attended to them, and did, but I do not think he was in a condition to originate an idea, or to discover an old one. "I think he is of that

unusual high type that he rather disregards money, and under those distressing circumstances I don't believe he would be liable to think about the money side or remuneration that he might obtain. I think this attitude principally came from his grief or the effects of grieving over the accident plus the natural tendency of Mr. Mewborn. To be frank, Mr. Mewborn is a very unusual man. He is not the type that thinks much of the money side. He lives in a rather high thought. That type of mind is not liable to think about money and material matters under these circumstances."

Plaintiff's partner testified: "He was very much grieved all the time, and some time after Palmer Mewborn's death; he did not seem to have his mind on his business at the store or farm. I looked after the store, but he did not seem to have his mind on the farm, but all on this boy."

The defendant, in reply, offered evidence tending to show that the plaintiff "went about his usual duties except he appeared to be sometimes thinking of things and was grieved over the accident."

Mrs. Mewborn testified: "I certainly did not consider my husband crazy at that time, nor do I now."

Upon denial of liability and issues joined, there was a verdict and judgment for the plaintiff, from which the defendant appeals, assigning errors.

*Dawson & Jones for plaintiff.*
*C. H. Gover for defendant, appellant.*

STACY, C. J., after stating the case: The accident occurred 28 June, 1925; the extent of the injury was not known until 8 August following; written notice was given to the defendant 12 September thereafter; Was this a sufficient compliance with "Condition C" of the policy, requiring immediate written notice of the accident, under all the facts and circumstances disclosed by the record? We think the evidence was such as to carry the question to the jury.

The trial court was correct in refusing to hold, as a matter of law, that the notice was not given as soon as reasonably practicable under the circumstances, or without unnecessary delay, and in submitting the question to the jury to determine whether the plaintiff had acted with reasonable promptness in the matter. The expression "immediate written notice," as used in the policy, we apprehend, was intended to impose upon the plaintiff the exercise of reasonable diligence in giving the required notice, which, under the apparent weight of authority, should be measured by his ability and opportunity to act in the premises. *Carey v. Farmers, etc., Ins. Co.*, 27 Or., 146, 40 Pac., 91; *Rhyne v. Ins. Co.*, 196 N. C., 717, 147 S. E., 6.

The following from the opinion of the Supreme Court of New Hampshire in the case of *Ward v. Md. Cas. Co.*, 41 Atl., 900, has been approved by the Supreme Court of the United States *(Fidelity & Deposit Co. v. Courtney*, 186 U. S., 342), and in many jurisdictions, as the proper construction of such a provision in a contract of insurance:

"The defendants' liability depends in part upon the answer to the question whether the plaintiffs gave them 'immediate' notice in writing of O'Connell's accident, the claim made on account of it, and the suit that was brought to enforce the claim. This involves an ascertainment of the meaning of the word 'immediate' as used in the policy. The word, when relating to time, is defined in the Century Dictionary as follows: 'Without any time intervening; without any delay; present; instant; often used, like similar absolute expressions, with less strictness than the literal meaning requires—as an immediate answer.' It is evident that the word was not used in this contract in its literal sense. It would generally be impossible to give notice in writing of a fact the instant it occurred. It cannot be presumed that the parties intended to introduce into the contract a provision that would render the contract nugatory. As 'immediate' was understood by them, it allowed the intervention of a period of time between the occurrence of the fact and the giving of notice more or less lengthy according to the circumstances. The object of the notice was one of the circumstances to be considered. If it was to enable the defendants to take steps for their protection that must necessarily be taken soon after the occurrence of the fact of which notice was to be given, a briefer time would be required to render the notice immediate according to the understanding of the parties than would be required if the object could be equally well attained after considerable delay. For example, a delay of weeks in giving notice of the commencement of the employee's suit might not prejudice the defendants in preparing for a defense of the action, while a much shorter delay in giving notice of the accident might prevent them from ascertaining the truth about it. The parties intended by the language used that the notice in each case should be given so soon after the fact transpired that, in view of all the circumstances, it would be reasonably immediate. If a notice is given 'with due diligence under the circumstances of the case, and without unnecessary and unreasonable delay,' it will answer the requirements of the contract. . . . Whether the notices were reasonably immediate—like the kindred question of what is a reasonable time—are questions of fact that must be determined in the Superior Court."

Speaking to the subject in *Harden v. Ins. Co.*, 164 Mass., 382, it was said by *Morton, J.,* delivering the opinion of the Court: "Whether the

statement was 'forthwith rendered' depended on whether, taking all of these circumstances and considerations into account, the plaintiff used due and reasonable diligence. If he did, then it was 'forthwith rendered,' within the fair meaning of the policy; and whether he did or did not was a question of fact for the jury."

Again, in *Woodman Accident Assn. v. Pratt,* 62 Neb., 673, 87 N. W., 546, *Holcomb, J.,* after a full review of the authorities, says: "In respect of the rule of construing provisions in a contract of insurance for notice of accident and injury or loss or damage and proof of the same to be given 'forthwith' or 'immediately' or within a stipulated time, the authorities are not entirely harmonious, and yet from the examination we have been able to make in the limited time at our command the great weight of authority is to the effect that the exercise of due diligence and reasonable effort on the part of the insured to meet the requirements thus imposed, to be determined under all the circumstances as disclosed in each individual case, is deemed a compliance with such provisions although not within the time according to the strict letter of the terms used in defining the same."

It may be conceded that the decisions on the subject are variant, some holding that "as a man consents to bind himself, so shall he be bound" according to the literal meaning of the terms used in the contract, while others seemingly take a more liberal view of what the parties really intended, look with disfavor upon forfeitures, and sustain a recovery even in the face of a failure strictly to comply with the requirements of notice, where the notice given complies substantially with the spirit and meaning of the contract. 14 R. C. L., 1333. With this latter view, our own decisions are in full accord. *Allgood v. Ins. Co.,* 186 N. C., 415, 119 S. E., 561; *Grabbs v. Ins. Co.,* 125 N. C., 389, 34 S. E., 503.

It should be observed, perhaps, that we are not now dealing with a provision requiring something to be done before loss or injury, such as the payment of premiums at a stipulated time, or observing conditions which affect the nature and desirability of the risk. Such stipulations are usually regarded as of the essence of the contract, and on their compliance depends the life and success of the insurance company. *Clifton v. Ins. Co.,* 168 N. C., 499, 84 S. E., 817. It is also conceded that there is a reasonable basis and valid cause for inserting the present stipulation in the contract. But the risk assumed has neither been increased, nor the rights of the defendant jeopardized, by the delay of the plaintiff in giving notice of the injury. We are not, therefore, disposed to adopt a hard-and-fast rule which would relieve the defendant from liability, voluntarily assumed on its part for a consideration, and deny to the plaintiff all right of recovery.

There was nothing said in *Peeler v. Casualty Co.,* 197 N. C., 286, which, when properly interpreted, militates in any way against our present position.

While the case is not altogether free from difficulty, we have concluded that, on the whole record, the verdict and judgment should be upheld.

No error.

BROGDEN, J., dissents.