BUCKNER, Plaintiff, vs. BUCKNER and another, Defendants: BUCKNER, Appellant, vs. GENERAL CASUALTY COMPANY, Respondent.

*February 8—March 8, 1932.*

304

306

For the appellant there was a brief by *Riley & Ohm* of Madison, and oral argument by *Miles C. Riley.*

· For the respondent there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

ROSENBERRY, C. J.   It is the contention of the insured· that under the evidence offered and received upon the trial it was a question of fact for the jury as to whether or not the insured breached his contract by failing to co-operate in the defense of the action as required by the terms of the policy.

It is the contention of the defendant that the verdict was properly directed by the court because (1st) the ·evidence established beyond any reasonable difference of opinion and therefore as a matter of law that the insured violated the conditions of the policy as to co-operation and as to giving full information to the company; (2d) that it appears as a matter of law that the judgment obtained by default by the plaintiff against the insured in Illinois was not a liability or loss sustained under compulsion and was not a loss·or liability coming within the primary insuring clause of the

contract but was a liability voluntarily assumed; (3d) that it appears as a matter of law that the judgment obtained in Illinois was obtained through collusive conduct on the part of the insured and in fraud of the company's rights; and (4th) that it appears as a matter of law that the insured violated his duty under the policy and under the law by refusing to permit the company to defend, reserving its right to claim a breach on the part of the insured and thereafter making no effort to avoid a default judgment.

In deciding the motion for a directed verdict the trial court said:

"Considering the information given by Homer Buckner (the insured) to the insurance company's attorneys in the questionnaire, together with the information given by him to the same attorneys at a later time and then comparing that information with the testimony given by Homer Buckner (insured) in the two adverse examinations, I cannot help to come to the conclusion that Homer Buckner (insured) entirely failed to co-operate with the insurance company in the defense of the Illinois action, and that such failure materially and substantially worked to the prejudice and injury of the position of the insurance company in this action. . . . The insurance company had to depend entirely upon the truthfulness of Homer Buckner's (insured) information and testimony in defending the Illinois action. It is very apparent from the inconsistent statements made by Homer Buckner (insured) in the questionnaire and in the two adverse examinations that his testimony would be absolutely useless, if not worse than useless, to the insurance company in the defense of the Illinois case. . . . In my opinion, Homer Buckner (insured), in view of the whole situation as it had developed just prior to the trial in the Illinois case and after the defense had been tendered to him, was in duty bound to appear and contest the Illinois action and to attempt in every way to minimize the amount of that judgment. He failed entirely in this duty. On the contrary, instead of attempting to minimize the amount of the judgment in that action, it appears to me that in his

testimony given at the adverse examination in Mount Horeb he materially increased the amount of that judgment by testifying that the sum of one thousand dollars would be a reasonable compensation for medical, hospital and nurse expenses, when, as a matter of fact, his bill was only for $655, which was presented to the plaintiff in the Illinois action after the plaintiff had told him to present such bill as he would have presented to a stranger."

There seems to be little conflict in the authorities as to the duties of the insured under contracts similar to the one existing between the company and the insured in this case. It is held almost universally that co-operation does not mean that the insured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair, frank, and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense. *Coleman v. New Amsterdam Cas. Co.* 247 N. Y. 271, 160 N. E. 367; *Ward v. Maryland Cas. Co.* 71 N. H. 262, 51 Atl. 900; *Francis v. London Guar. & Acc. Co.* 100 Vt. 425, 138 Atl. 780; *Moran Bros. Co. v. Pacific Coast Cas. Co.* 48 Wash. 592, 94 Pac. 106.

The purpose of including these provisions in the policy of insurance cannot be better stated than was done by the court in *American Automobile Ins. Co. v. Fidelity & Cas. Co.* 159 Md. 631, 152 Atl. 523. The court said:

"The conditions are perfectly reasonable conditions framed with the object of protecting the insurance company against risk of collusion between the automobile owner and persons claiming damages for alleged torts. Such conditions would be robbed of nearly all practical value if in applying them the question of the validity of the professed claim must be investigated. For the purpose of protecting the company against collusion in regard to fabricated or unfounded claims, it is necessary that the conditions should exclude the possibility of such conduct in connection with any claim of any character."

This is especially true in cases where liability is claimed to exist in favor of one member of a family against another member of a family, the ultimate loss to be borne by the insurer. It is quite apparent that if the insurer is to prepare an adequate defense in cases of contested liability or make a just settlement, it must have from the insured a complete and truthful statement of the facts made in a spirit of co-operation and helpfulness by the insured, who is, in many cases at least, the only source of information available to the insurer. This is not to say that any slight error in the statement of facts or failure to disclose some collateral fact will necessarily be held to amount to a breach of the contract, but the withholding of information, the making of untruthful statements, and the concealing of necessarily relevant and material facts can have but one purpose and that is to help the claimant rather than the insurer. See *Metropolitan Casualty Ins. Co. v. Blue,* 219 Ala. 37, 121 South. 25.

With these principles of law in mind we shall examine the testimony to see whether or not more than one reasonable inference may be drawn therefrom. In response to questions submitted to him by counsel for the company, the insured said:

"I topped the hill carefully, as I drive this road often and have had trouble passing cars there—then when no one was in sight I put on power gently—my wheels were in this rut. I had turned a little to the right thinking to get out of the rut as it was running close to the snow bank. I did not slow down but rather let the car increase in speed, when suddenly we were apparently hurled through the air in our position in the car and light on the side."

In response to the question as to whether he considered himself at fault he said:

"The only thing I can see is that I should have slowed up when the car followed the rut toward the snow bank—

and should not have added speed going down the hill on an icy road—but of course I had the road to myself as no one was in sight and thought I was safe."

Counsel for the company subsequently inquired in regard to chains, in response to which the insured said: "I had no chains on, as it had been my experience that a car skidded worse on ice with chains on."

As already stated, Dr. Buckner, the insured, took care of the plaintiff in his own hospital and rendered a bill for $655, which included reduction of fracture, medical attendance, sixty days in hospital, and night nurses. In his deposition taken at Mt. Horeb the insured stated that he took off the chains in order to drive faster; that after topping the hill he put on all power and speed the car was capable of, went in the icy ruts with full speed on as he saw no cars ahead. He stated that after the car capsized it slid on its side for a hundred feet or more, and testified that his speed at the time of the accident was between twenty-five and thirty-five miles an hour and gaining rapidly. In his original report he stated the speed to be fifteen to twenty miles an hour. Upon his adverse examination in the case and also upon this trial he testified that he had always known it was reckless to drive as he did. He testified on his adverse examination that he knew it would be careless to drive at full speed down an icy road; that such conduct would be reckless; that he gave the car all the gas that it had. At the time of the taking of the deposition at Mt. Horeb the insured testified that his own charges for medical, hospital, and nursing services were $1,000 instead of $655 for which he had rendered a statement. He also admitted upon cross-examination at the trial that he knew his statements that the hospital and medical services were of the reasonable value of $1,000 was an increase of over $300 above the amount named in the bill; that he did not care who paid it, and other matters of like kind.

As already stated, the insured made no defense of the action in Illinois, where judgment was rendered against him by default. We cannot set out all of the testimony in detail, but it is considered that the trial court was not in error in directing a verdict against the defendant insured. The insured wholly failed to perform his contract. Counsel for the company pursued the only course they could pursue, and, in view of the fact that the contract was clearly breached by the insured, perhaps went farther than was strictly necessary in offering to defend the action in Illinois if the insured would permit them to defend without waiving any claim of breach of the contract by the insured. Whatever the relative duties and obligations of the parties to the contract were after the company had renounced the contract, it was the duty of the insured to make such reasonable defense as he could against the claim in the state of Illinois, whether he went to that state in good faith or for the purpose of enabling service to be made against him in a foreign jurisdiction or not. This he failed to do. It is plain from the record that the insured was co-operating with the plaintiff in prosecuting the action and not with the company in defending it. No other permissible inference can be drawn from the evidence in the case, hence the trial court properly directed the verdict.

*By the Court.*—Judgment affirmed.