Wilhelm Rowoldt for use of Beulah Flanagan and Marjorie Flanagan, Appellant, v. Cook County Farmers Mutual Insurance Company, Appellee.

Gen. No. 40,945.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed April 17, 1940. Rehearing denied April 30, 1940.

McKINLEY, PRICE & QUINDRY, of Chicago, for appellant; WILLIAM McKINLEY and PAUL E. PRICE, of counsel.

ERWIN W. ROEMER and EDWIN D. LAWLOR, both of Chicago, for appellee; EDWIN D. LAWLOR, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Beulah Flanagan and Marjorie Flanagan, hereafter called plaintiffs, brought suit against Wilhelm Rowoldt to recover damages suffered by them because of his negligent driving of his automobile; upon trial by a jury he was found guilty and Beulah Flanagan's damages were assessed at $6,200, and Marjorie's at $750, and judgments for these amounts were entered June 2, 1938. The present action is garnishment against the defendant insurance company, which had issued to Rowoldt its automobile liability insurance policy; after trial a judgment was entered against the garnishee defendant, assessing plaintiffs' damages at $6,950 and interest; the court on motion granted a new trial, and on petition to this court leave was given to appeal from that order.

The trial court stated that his only reason for granting a new trial to defendant was that certain evidence offered by it should have been admitted. This evidence was to the effect that the judgment debtor, Rowoldt, had real estate in Cook county sufficient to satisfy the judgment. By our statute on Judgments, ch. 77, sec. 11 [Jones Ill. Stats. Ann. 107.161], it is provided that the person in whose favor execution is issued may elect as to what property shall be levied upon, provided personal property shall be last taken.

The affidavit for garnishment was filed November 16, 1938, and answer to the interrogatory was filed; an additional interrogatory was filed, and December, 1938, defendant filed its answer to this additional interrogatory. These answers in substance denied that it owed Rowoldt anything and any liability under its insurance policy issued to him. Four months later, that is, April, 1939, the appearance of the attorneys for the garnishee was withdrawn and that of another counsel, Erwin Roemer, substituted, and then for the first time there was an amendment to the answers tendered asserting that Rowoldt had real estate out of which the judgment might be satisfied; the trial court

denied leave to file the amendment, except in one respect not involved in this appeal.

It is conceded that all the statutory conditions prerequisite to the issuance of a summons against the defendant garnishee had been complied with. The execution on the original judgment was delivered to the sheriff on July 12, 1938, and an actual demand was made upon the judgment debtor and the return of "no property found" was made October 10, 1938. The return in due order recited a demand upon Rowoldt to satisfy the writ, the delivery of a copy to him with an indorsement that he must file a schedule of his property within 10 days, and that, "Being unable to find any property of the within named defendant in my County on which to levy this writ I therefore return the same no property found. . . ." There is no claim that this return was made at the suggestion of plaintiffs or their counsel. Subsequently, counsel for plaintiffs filed an affidavit in garnishment reciting the judgment against Rowoldt, the issuance of the execution thereon and the return of "no property found"; the affidavit further avers that defendant Rowoldt has no property within the knowledge of this affiant in his possession liable to execution, but the affiant has just reason to believe that the defendant insurance company is indebted to Rowoldt or has effects or estate of his in its hands.

Plaintiffs were not bound to make every possible effort to find property of their judgment debtor, and garnishment proceedings will not be defeated if it appears that they used reasonable effort to find it. If a judgment creditor, his attorney or the sheriff knows of the existence of such property prior to suing out garnishment summons, such information can not be ignored. The garnishee was summoned November 16, 1938, and interrogatories were filed on the same date and not until April, 1939, did the garnishee defendant assert that the judgment debtor had real estate.

We find no cases supporting the proposition that a garnishee may assert as a defense that the judgment debtor has real estate or other property sufficient to satisfy the judgment. If a garnishee has property belonging to the judgment debtor, of what concern is it to him that the judgment debtor has other property. As was said in *Pine Tree Lumber Co. v. Central Stock & Grain Exchange,* 238 Ill. 449, the garnishee is, theoretically, a disinterested stakeholder. He may deny any indebtedness to the judgment debtor or that he has any property or effects of such debtor, and upon showing these facts is entitled to be discharged. But, "If he owes the defendant or has property or effects belonging to him in his hands, it is a matter of indifference to him whether he pays the money or delivers the property to the defendant or to the plaintiff in the case, provided he is properly protected in making such payment or delivery. . . . If a judgment is obtained against the defendant it is no concern of the garnishee that irregularities have intervened which the defendant may be willing to waive or fail or neglect to take advantage of." In the instant case although demand was made upon Rowoldt, the judgment debtor, nearly four months prior to the affidavit in garnishment, he saw fit to waive his right to have the real estate first taken. How then can the garnishee avail itself of any irregularity which the judgment debtor apparently is willing to waive? Cases like *Kelly v. Marks,* 264 Ill. App. 402, are not in point, as there the return of the sheriff was made pursuant to directions of plaintiff or his counsel and the execution debtor moved to vacate the judgment against the garnishee.

In *Zimek for use of Fieldcamp v. Illinois Nat. Casualty Co.,* 370 Ill. 572, it is said that the return of the execution by the sheriff "no property found" is prima facie evidence of the fact that the judgment debtor had no property in Cook county, and cited *Chanute v. Martin,* 25 Ill. 49, which held in substance

that to defeat the garnishment it must appear there was real estate of which the sheriff, the plaintiff or his attorney had knowledge, or which, by the exercise of reasonable care, could have been discovered. Also, in the *Zimek* case it does not appear that the judgment debtor had any knowledge of the return or of the existence of the execution against him, thus distinguishing it from the instant case.

The trial judge stated in his opinion that leave should have been granted to defendant to file the special defense of the existence of real estate and that evidence in support of this should have been admitted, and for this error and for no other reason the motion for a new trial was granted. For the reasons we have stated we hold that the court improperly ruled upon this point.

Both parties agree that this court is not confined to any particular ground or reason stated by the trial court for the allowance of a new trial but may examine the complete record for any other errors committed. However, we encourage the practice in the trial court of stating its reasons as an aid to this court. Rule 1 of this court; Rule 36 of the Supreme Court; Ill. Rev. Stat. 1939, ch. 110, par. 259.36 [Jones Ill. Stats. Ann. 105.36].

Defendant asserts that the liability insurance policy issued to Rowoldt provided that within five days after the happening of any alleged automobile accident he should give notice in writing to the secretary of the insurance company and that no such notice was given; that he did not immediately forward to the garnishee defendant any summons served upon him in any suit instituted against him as a result of the automobile accident. To this the plaintiffs reply that the requirement of written notice within five days was waived and the defendant garnishee was fully informed of the facts and through its counsel assisted in the trial of the action against the insured, Rowoldt.

The collision between Rowoldt's automobile, driven by him, and the one in which the plaintiffs were riding happened July 12, 1937; Rowoldt was arrested at midnight July 12th for leaving the scene of the accident; on the morning of July 14th he called at the home of August Geweke, president of the defendant insurance company and told him that he had been arrested for leaving the scene of an accident; that he did not know anything about an accident and denied that he had been involved in an accident; Geweke told him that the insurance policy which he carried with the defendant insurance company did not cover him in a criminal case but only for civil actions; he was advised to see the secretary of defendant company, which he did, and then saw Mr. Walsh, the company's attorney, who also told him that the policy did not cover the criminal case but only a civil claim; shortly afterward he gave Mr. Walsh a letter which he had received from a Mr. Guerine, attorney for plaintiffs. July 26, 1937, Rowoldt came to Mr. Walsh's office and admitted he had lied when he had said that he was not involved in the accident; that he was in the accident and wanted to tell the truth as to how it happened, whereupon a lengthy statement dictated by Mr. Walsh was taken in which Rowoldt changed his story and described in detail the accident in which he was involved; this was signed and sworn to by him; Mr. Walsh notified the secretary of the defendant company and told him in a general way the substance of the affidavit.

In August, 1937, Rowoldt received a summons in connection with the claims of plaintiffs and this was mailed to Mr. Walsh, who prepared and filed an answer on behalf of Rowoldt. Rowoldt testified to having various conversations with Walsh with reference to plaintiffs' suit, Mr. Walsh advising how they might be able to get a cheaper settlement; Rowoldt testified that Walsh advised him to stick to his first story denying he was in the accident; this was denied by Walsh,

but Mr. Walsh was present October 15, 1937, when Mr. Rowoldt in a deposition said he was not present at the time of the accident. There is further testimony as to conversations between Walsh and Rowoldt and Mrs. Rowoldt, who was riding with Rowoldt at the time of the accident. Subsequently, in February, 1938, Mr. Walsh withdrew his appearance in plaintiffs' case and Rowoldt employed other counsel.

Although Rowoldt originally denied participation in the accident, less than two weeks thereafter he made a full, detailed statement to Walsh under oath in which he admitted his part in the accident. Defendant company did not do anything to deny its liability under the policy but permitted its attorney to enter his appearance in the plaintiffs' suit. The jury could properly find that even if there were a breach of the provisions of the policy, the defendant insurance company, with full knowledge of the facts, for several months permitted its attorney to represent Rowoldt who was continuously acting under the advice of defendant's attorneys. In *Brogdon v. American Automobile Ins. Co.*, 290 Mich. 130, it was said that "anything done by an insurance company after they learn the true facts that may be considered as a waiver, as a rule will be considered a waiver. . . ."

Moreover, the rights of the insurance company were not prejudiced by the failure of Rowoldt, the insured, to file the written notice or truthfully to inform the company of the facts in the first instance. Similar facts were under consideration in *Pacific Indemnity Co. v. McDonald*, 107 F. (2d) 446, 450, where the insurance company made the claim that the false statements of the insured "*ipso facto* breached the insurance policy." The court held that "The prompt withdrawal of the falsehood cured the default in the absence of some showing that the company was prejudiced by the delay in telling the truth." To the same effect is *Harrison v. United States Fidelity & Guaranty Co.*, 255 Ill. App. 263, and other cases.

Counsel for defendant make a savage attack on Rowoldt, calling him deceitful and a perjurer and asserting that the verdict in the plaintiffs' case was obtained by fraud and collusion between Rowoldt and the plaintiffs in that case. This was a question properly submitted to the jury. The fact that Rowoldt was present but did not testify at the trial of plaintiffs' suit is not sufficient to support the claim of collusion. If the facts were as given in the sworn statement of Rowoldt, his liability to respond in damages was clear.

It is said that the remarks and arguments of counsel for plaintiffs were improper and prejudicial. Some of these remarks were unnecessary but do not compel a new trial. As was said in the very recent case of *People v. Billings,* 372 Ill. 433, 441, "A trial should be conducted without prejudicial conduct of counsel and with the dignity and solemnity that is required in passing upon the question of a defendant's guilt or innocence. While the facts shown as to such conduct are not to be commended, but deserve criticism, they do not show that defendant did not have a fair trial."

The closing argument of plaintiffs' counsel is severely criticized, but the argument which counsel for defendant made has been entirely omitted from the report of the proceedings at the trial.

In *Metropolitan Life Ins. Co. v. Banion,* 106 F. (2d) 561, 568, the court said: "Ordinarily a judgment will not be reversed on the ground of improper argument where all arguments are not in the record so that it can be determined whether the parts drawn in question were provoked or made in response."

It was not error to permit the introduction of the complaint and answer of Rowoldt in plaintiffs' suit and the answer of the garnishee defendant in the garnishment suit. The garnishee had answered denying that it had any notice or knowledge of any automobile accident in which Rowoldt was involved, except by the garnishment proceedings, and had no knowledge and received no summons concerning the automobile acci-

dent. It was competent to show that the answer on behalf of Rowoldt in plaintiffs' suit was filed by the same attorneys who filed the answer of the garnishee in this suit for the purpose of showing that defendant had admitted liability by assuming the defense in the plaintiffs' case. *Allen v. United States Fidelity & Guaranty Co.,* 269 Ill. 234.

Other points are made but none of them are of sufficient importance to require the allowance of a new trial, although counsel for defendant have indulged in their brief in some heated remarks.

The trial court was in error in granting a new trial on the ground of the refusal to admit evidence of the ownership of real estate by the judgment debtor.

For the reasons above indicated, the order granting a new trial is reversed and the cause remanded with directions to enter judgment upon the verdict rendered.

*Reversed and remanded with directions.*

MATCHETT, P. J., and O'CONNOR, J., concur.