ADELL Q. HENDERSON v. ROCHESTER AMERICAN INSURANCE COMPANY.

(Filed 29 March, 1961.)

**1. Insurance § 62—**

Conditions in a policy of automobile liability insurance that insured should give notice and cooperate in the defense of any action which might result in a judgment against the insured is, in the absence of statutory provision to the contrary, binding on the parties and enforceable.

**2. Same—**

The cooperation clause in a policy of liability insurance must be given a reasonable interpretation to accomplish the purpose intended, which is to put the insurer on notice and afford it opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted, and insured's violations of the clause which do not affect this purpose but which are merely technical or immaterial and do not prejudice insurer, will not prevent recovery on the policy.

**3. Same— Whether insurer was prejudiced by false statements of insured, corrected years before the trial, held question of fact upon the evidence.**

Where the evidence is to the effect that insured repeatedly made false statements after the accident that he was not driving the vehicle at the time, that shortly after the institution of action against insured, insured corrected his statement and notified insurer that he was driving the vehicle, that voluntary nonsuit was taken in the action and another action instituted within one year thereof, that insurer, on the ground of breach by insured of the cooperation clause of the policy, refused to defend either action, and that the action against insured was tried some three years after insured had corrected his misstatement and notified insurer thereof, *is held* to raise the issue of fact as to whether insured's misstatements prejudiced insurer, and the determination of such question of fact by the court adversely to insurer in a trial by the court under agreement of the parties is affirmed.

PARKER, J., dissents.

APPEAL by defendant from *Paul, J.,* December 1960 Term, of DUPLIN.

Defendant issued plaintiff (hereafter called Henderson) an automobile liability insurance policy. It was in force in January 1955. Subject to the conditions of the policy, defendant agreed to pay on behalf of Henderson all sums, within the policy limits, which Henderson became obligated to pay as damages because of bodily injury or death resulting from the ownership or use of the automobile named in the policy; defend any suit against Henderson growing out of the

operation of the motor vehicle; and pay all costs taxed against Henderson as a result of such litigation.

Defendant's obligation was on condition that Henderson "shall cooperate with the company and, upon the company's request, shall attend hearings and trials, and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits." The policy contained this further condition: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy. . ."

About 1:00 a.m., 30 January 1955, Henderson was operating the insured automobile. William J. Parker, Jr., was riding as a guest in the front seat of the automobile. When Henderson attempted to round a curve, he lost control of the vehicle and an accident ensued, resulting in Parker's death. Henderson said to Roscoe English, the first to arrive at the scene of the accident: "It is my car but he (meaning Parker) was driving." Henderson informed Highway Patrolman Briley, investigating the accident, the vehicle was operated by Parker and not by Henderson. Similar statements were made to the attorney for defendant insurance company. All of these statements were made shortly after the accident. Henderson gave defendant a written statement dated 1 February 1955 to the effect that Parker was operating the motor vehicle at the time of the accident.

On 18 May 1955 the administratrix of Parker's estate instituted suit for $25,000 damages for the wrongful death of her intestate. On 29 May 1955 and after process had been served in the action for damages for wrongful death, Henderson made an affidavit which he gave to Briley, stating that he, Henderson, was driving, and "William Jr. Parker was riding in the right front. . . I was driving between 65 and 75 mph. We met a car and his lights blinded me. I ran off on the right shoulder, when I pulled it back to the left, it went out of control, and turned over several times. I had drank some beer that night, 3 cans since midnight."

On 20 May 1955 Henderson notified defendant of the action against him for damages and that he, Henderson, was driving the vehicle. On 23 May 1955 Henderson agreed with defendant that it might investigate the accident without prejudice to its rights under the contract. On 15 June 1955, defendant notified Henderson "that because of your failure to cooperate in giving the company the true facts about this matter that you have voided your insurance policy . . . we hereby disclaim all liability to you by reason of the accident which occurred on or about January 30, 1955."

The personal representative of Parker, in her action for damages at the February 1957 Term of Duplin County, submitted to a voluntary nonsuit. Thereafter and within one year from the judgment of nonsuit she brought a new action. Defendant was notified of the new action. It again declined to defend, asserting Henderson's conflicting statements as to the driver as a breach of the contract provisions. That action was tried at the December 1958 Term of Duplin. Judgment was rendered against Henderson for the sum of $4,291 and $31.25 costs. Henderson has paid $250 and is obligated to pay an additional $500 attorney's fees for services rendered him in the actions for damages for Parker's death. Henderson has paid the damages and costs awarded Parker's administratrix to avoid a sale of his property under execution.

The parties waived jury trial. They stipulated the facts as summarized above. In addition to the facts stipulated they agreed: "that the Court may find such additional facts which it considers necessary or advisable for a complete determination of this controversy, together with such inferences as may be drawn by the Court from the stipulated facts or those which may be found by the Court."

The court found any misstatements made by Henderson were corrected and defendant given final version of the accident on 20 May 1955, that defendant had from that date until December 1957 in which to make any investigation and prepare such defense as it deemed advisable.

"That the defendant insurance company, as insurer, was not materially prejudiced by the original false statements of the said Adell Q. Henderson, its insured, or by the alleged non-cooperation on his part, the said false statements having been corrected long prior to the trial of the cause which resulted in the judgment against the insured; that the said defendant insurance company had the facts and was in a position to settle if it saw fit to settle, or to defend if it saw fit to defend.

"That the said original misstatements by the insured, corrected by him as herein recited, did not constitute a material deviation from the contract of insurance and did not result in the substantial impairment of any of its policy rights, or any detriment or injury; that the said defendant insurance company had sufficient time to investigate and prepare for trial or adjust the claim if it were deemed the preferable course; that said defendant insurance company suffered no detriment or injury by reason of the original misstatements on the part of its insured and the same did not constitute a breach of the provisions of the contract of insurance which plaintiff had with the defendant and, consequently, did not work a forfeiture."

Based on the facts as stipulated and found by the court, it concluded as a matter of law that defendant was liable on its insurance policy for the amount adjudged owing by Henderson to the Parker estate, costs incurred, and the sum of $750, attorney's fees. Defendant excepted and appealed.

*Beasley & Stevens for plaintiff appellee.*

*Rivers D. Johnson, Jr., C. D. Hogue, Jr., and W. J. P. Earnhardt, Jr., for defendant appellant.*

RODMAN, J.  The provisions of liability insurance policies imposing as conditions to liability the duty of insured to give notice of accidents and cooperation in the defense of actions which might result in a judgment against insured are, except where otherwise provided by statute, binding on the parties. Properly interpreted, they will be enforced. *Muncie v. Insurance Co.,* 253 N.C. 74; *Peeler v. Casualty Co.,* 197 N.C. 286, 148 S.E. 261.

The provisions are to be given a reasonable interpretation to accomplish the purpose intended, that is, to put insurer on notice and afford it an opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted, and to cooperate fairly and honestly with insurer in the defense of any action which may be brought against insured, and upon compliance with these provisions to protect and indemnify within the policy limits the insured from the result of his negligent acts. An insurer will not be relieved of its obligation because of an immaterial or mere technical failure to comply with the policy provisions. The failure must be material and prejudicial. *Ball v. Assurance Corp.,* 206 N.C. 90, 172 S.E. 878; *Mewborn v. Assurance Corporation,* 198 N.C. 156, 150 S.E. 887; *Hunt v. Fidelity Co.,* 174 N.C. 397, 93 S.E. 900; *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742, where it is said: "While there is some contrary authority, the better reasoned cases hold that the failure to co-operate in any instance alleged must be attended by prejudice to the insurer in conducting the defense. Blashfield, Automobile Law, Vol. 6, sec. 4059, p. 78."

The criticism of *MacClure v. Casualty Co., supra,* in *Muncie v. Insurance Co., supra,* was not directed to the question now under consideration but to the question of who carried the burden of proving reasonable notice given to insurer of the accident and potential liability under its policy.

Circuit Judge Parker said, in *State Automobile Ins. Co. v. York,* 104 F 2d 730: "It is well settled that, to relieve the insurer of liability

on the ground of lack of cooperation, discrepancies in statements by the insured must be made in bad faith and must be material in nature and prejudicial in effect. *Medico v. Employers' Liability Ins. Corp.,* 132 Me 422, 172 A 1; *Ocean Accident & Guarantee Corp. v. Lucas,* 6 Cir., 74 F 2d 115, 98 A.L.R. 1461."

In *Griffin v. Fidelity & Casualty Company, New York,* 273 F 2d 45, the insured notified the insurer that he was operating the car at the time of the collision which occurred in July 1957. Insured pleaded guilty to a charge of aggravated assault caused by the collision. In December 1957 action for damages was instituted. Not until 28 February 1958 did the insured give the insurer a correct statement of the facts. His position was that he was seeking to protect his nephew, who was actually driving, from criminal charges. The court disposed of the insurer's contention that the policy had been breached by lack of cooperation by the false statement. It said: ". . .(U)nder the overwhelming weight of authority, including that of the courts of Texas, it is the law that it is essential to proof of breach of the cooperation clause, that actual, not merely suppositious or theoretical prejudice to the insurer therefrom be shown . . ."

These statements of the law find support in *Norwich Union Indemnity Co. v. Haas,* 179 F 2d 827; *Juvland v. Plaisance,* 96 N.W. 2d 537; *General Acc. Fire & Life Assur. Corp. v. Rinnert,* 170 F 2d 440; *Rowoldt v. Cook County Farmers Mut. Ins. Co.,* 26 N.E. 2d 903; *Bernadich v. Bernadich,* 283 N.W. 5; *Cowell v. Employers' Indemnity Corporation,* 34 S.W. 2d 705; 5A Am. Jur. 138-9.

What conduct suffices to relieve the insurer from liability for breach of the cooperation clause in policies similar to the one under consideration is the basis for annotations appearing in 34 A.L.R. 2d 266, 139 A.L.R. 780, 98 A.L.R. 1469, and 72 A.L.R. 1455.

As might be expected, courts have been called upon to decide cases based on many differing factual situations. Where there has been evidence tending to show collusion between the injured and the insured, courts have been careful to protect the insurer. Courts usually hold that misstatements persisted in until the trial or subsequent to the filing of pleadings by insured requiring a shifting of ground and a new and different defense suffice as a matter of law to establish a failure to cooperate. Except for these classes of cases, courts generally hold the question of materiality and prejudice is a question for the jury. This case falls in the latter category. There is nothing to suggest collusion. Judge Paul inquired of the parties if there was any evidence in addition to the stipulation on the question of insured's noncooperation or on the effect of prejudice because of misstatements made

prior to the institution of the civil action. He was informed no further evidence would be offered.

We are of the opinion and hold that the question of compliance with the cooperation clause was a question of fact to be determined by the court, acting by agreement of the parties as a jury.

Affirmed.

PARKER, J., dissenting. Judge Paul found as facts in substance that defendant, as insurer, was not materially prejudiced, and suffered no detriment or injury by the false statements of plaintiff, the insured. Defendant assigns this as error, for the reason there is no evidence to support such findings of fact. I think the assignment of error No. 1 is good, and should be sustained.

In my opinion, the judge's conclusions of law and judgment, which are assigned as errors by defendant, are erroneous.

The policy provides: "*No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . . .*" Emphasis mine. One of the terms of the policy is the co-operation clause set forth in the majority opinion. This provision as to co-operation is material, and the deliberate breach thereof by plaintiff here releases the insurer from the obligations imposed by the contract of insurance, although no prejudice may have resulted. This principle of law is supported by the overwhelming weight of authority. *Peeler v. Casualty Co.,* 197 N.C. 286, 148 S.E. 261; *Muncie v. Insurance Co.,* 253 N.C. 74, 116 S.E. 2d 474; *Houran v. Preferred Acc. Ins. Co. of New York,* 109 Vt. 258, 195 A. 253, where an abundance of authority is cited in support of the rule; *State Farm Mut. Auto Ins. Co. v. Cassinelli,* 67 Nev. 227, 216 P. 2d 606, 18 A.L.R. 2d 431; 98 A.L.R. 1467; 18 A.L.R. 2d p. 452 — Annotation, § 5, where compliance is expressly made a condition precedent. These cases and the annotations are concerned with the insured's failure to give timely notice, but the principle of law is the same as the principle of law applicable to the facts and the policy provisions here.

Plaintiff has no allegation in his complaint that the insurer has, by waiver or estoppel lost its right to defeat a recovery under the provisions of its policy in this case.

The greater weight of current authority and the sounder reason, I think, support the views expressed by *Chief Judge Cardozo* in *Coleman v. New Amsterdam Casualty Co.,* 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443, where he said speaking for a unanimous Court: "The plaintiff makes the point that the default should be condoned,

since there is no evidence that co-operation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

In *Buckner v. Buckner,* 207 Wis. 303, 241 N.W. 342, 344, it is said that "co-operation" was defined almost universally as in the *Coleman* case, *supra.* It was further held: "It is quite apparent that, if the insurer is to prepare an adequate defense in cases of contested liability, or make a just settlement, it must have from the insured a complete and truthful statement of the facts made in a spirit of co-operation and helpfulness by the insured who is, in many cases at least, the only source of information available to the insurer. This is not to say that any slight error in the statement of facts or failure to disclose some collateral fact will necessarily be held to amount to a breach of the contract, but the withholding of information, the making of untruthful statements, and the concealing of necessarily relevant and material facts can have but one purpose, and that is to help the claimant rather than the insurer."

In *United States Fidelity & Guaranty Co. v. Wyer,* 60 F. 2d 856, it was held: Non co-operation of insured held established as matter of law in action against insurer by person injured, where insured admittedly misrepresented to insurer facts respecting accident.

In *Brogdon v. American Automobile Ins. Co.,* 290 Mich. 130, 287 N.W. 406, it was held: Where automobile liability insurance policy required insured to furnish truthful account of circumstances leading up to and attending accident in which automobile might be involved, and insured claimed that he was not driving the automobile when it struck pedestrian and did not disclose that he was driving the automobile at such time until one-half day of trial of pedestrian's action against insured and insurer had elapsed, and insurer was diligent in its investigation of the facts and insured's false statement prevented earlier knowledge of liability, insured's conduct voided policy and absolved insurer from liability to pedestrian.

My views here have been well expressed by the statements and the reasoning of the Supreme Court of Appeals of Virginia in *State Farm Mut. Automobile Ins. Co. v. Arghyris,* 189 Va. 913, 55 S.E. 2d 16, a case with somewhat similar facts, where it is said: "It

seems perfectly apparent that the conduct of Bohler was a clear violation of the conditions of the policy. The evidence discloses a willful and deliberate breach by him of a material and essential clause, whereby he repeatedly misled the insurance company over a period of many months. He not only failed to claim the protection of the policy; but denied the liability of the company to him or to any one claiming through him, and this handicapped the insurer in the consideration of its liability. The insurer was, by the acts of Bohler, deprived of an opportunity to determine for itself, through an immediate investigation, aided by a true statement from its insured, whether it was liable and, if liable, whether it was advisable to make a settlement with the insured person without suit. There was a withholding of information, the making of untruthful statements, and the concealment of necessary, relevant, and material facts, actions not calculated to aid the insurer. There is no question of a minor variance in his testimony of unintentional or inadvertent statements, or of mere failure to disclose some collateral fact. Bohler failed to give to the company written notice of the accident of May 7th 'as soon as practicable.' He never gave any notice, except indirectly, until the day of the trial of the proceedings against him, that is, on December 5, 1947. His credibility was destroyed by reason of his contradictory testimony and affidavits, and whether or not he had any defense to the charge of negligence in operating the automobile, the conclusion is inescapable, that it could have made little difference had the company been required to rely upon his testimony. He did not merely neglect the performance of the cooperation condition, he willfully and deliberately failed to comply with it. Nothing is more mischievous or dangerous in litigation than a client who deliberately falsifies the facts in the preparation of his case." The *Virginia* case cites voluminous authority to support its position.

In my opinion, the deliberate and wilful conduct of plaintiff, the insured, was such a refusal to co-operate as to violate the policy. If the express conditions precedent to liability could be disregarded, insurers would be helpless to defend themselves against the chicanery and covin of their insured, and would be at their mercy. The law cannot make for plaintiff here a better contract than he chose to make for himself. *Whittle v. Associated Indemnity Corp.*, 130 N.J.L. 576, 33 A. 2d 866. By the majority opinion plaintiff here is allowed to profit by his own deliberate and false statements, which false statements are admitted by plaintiff. I vote to reverse, and to remand the case for a judgment of nonsuit.