VICTORIA KLOTZ GRECO, Plaintiff v. PENN NATIONAL SECURITY INSURANCE COMPANY, PENN NATIONAL HOLDING CORPORATION, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, CAROLINA HOME EXTERIORS, L.L.C., and DONALD JOSEPH MCKINNON, Defendants

No. COA11-483

(Filed 7 February 2012)

**Insurance—declaratory judgment—duty to cooperate**

The trial court erred in a declaratory judgment action concerning the parties' rights and responsibilities under an insurance policy by granting summary judgment in favor of defendant insurance company. Defendant failed to demonstrate that defendants McKinnon and Hanson had breached their duty to cooperate under the insurance policy.

Appeal by plaintiff from order entered 17 February 2011 by Judge Jay D. Hockenbury in Craven County Superior Court. Heard in the Court of Appeals 12 October 2011.

*Whitley Law Firm, by Robert E. Whitley, for plaintiff.*

*Pinto Coates Kyre & Brown, PLLC, by Deborah J. Bowers and David G. Harris II, for defendants.*

ELMORE, Judge.

Victoria Klotz Greco (plaintiff) appeals from an order of summary judgment entered in favor of Penn National Security Insurance Company, Penn National Holding Corporation, and Pennsylvania National Mutual Casualty Insurance Company (collectively, Penn National). Because Penn National has not shown that the insured in this case, defendant Donald Joseph McKinnon and Sharon Hanson (Hanson), failed to cooperate with defendant Penn National, we reverse the order of the trial court.

The parties have stipulated to the following facts for purposes of Penn National's summary judgment motion: On 1 May 2006, McKinnon and Hanson were driving in a Ford truck owned by Hanson and pulling a utility trailer owned by Carolina Home Exteriors, L.L.C. (CHE), on Highway 17 in Craven County. The trailer detached from the truck and collided with plaintiff's vehicle. Plaintiff was seriously injured. McKinnon worked for Rusty Hanson, who had subcontracted with CHE to replace vinyl siding at a house in Richlands. McKinnon had permission to use the utility trailer, which was insured by Penn National. The Ford truck was insured by Nationwide.

Plaintiff sued, though the complaint and other materials of the underlying tort claim are not part of the record on appeal. In September 2009, plaintiff filed a declaratory judgment action seeking a declaration of the rights of the parties as to the Penn National insurance policy. In her complaint, plaintiff alleged that the Penn National insurance policy, which had a $1 million limit, was in full force and effect at the time of the collision and, under that policy, Penn National must indemnify plaintiff for her damages arising out of the accident. She asked the trial court for a declaration of the rights and obligations of the parties as to the Penn National policy, specifically asking the court to rule that the policy provides full liability coverage for plaintiff's benefit.

Penn National moved for summary judgment, which the trial court granted following a hearing and its review of an affidavit by Janet Fusaiotti, a senior claim representative for Penn National, and its supporting exhibits. Plaintiff now appeals.

Plaintiff argues that the trial court erred by granting defendant Penn National's motion for summary judgment because Penn National failed to demonstrate that McKinnon and Hanson had breached their duty to cooperate under the insurance policy. The insurance policy includes several duties in the event of accident, claim, suit or loss. It states, in relevant part, that Penn National has "no duty to provide coverage under this policy unless there has been full compliance with the following dut[y]: . . . [Y]ou and any other involved 'insured' must . . . [c]ooperate with us in the investigation or settlement of the claim or defense against the suit[.]" The essence of the parties' disagreement on appeal is whether Penn National proved that McKinnon and Hanson did not cooperate with the investigation. We hold that it did not.

We review an order of summary judgment *de novo. Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). "Summary judgment is appropriate when there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law." *Id.* (quotations and citations omitted).

Our courts do not follow "the strict contractual approach when construing cooperation clauses in insurance contracts and have held that, in order to relieve an insurer of its obligations, the failure to cooperate must be both material and prejudicial." *Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 303 N.C. 387, 393 n.2, 279 S.E.2d 769, 773 n.2 (1981) (citing *Henderson v. Rochester American Insurance Co.*, 254 N.C. 329,

332, 118 S.E.2d 885, 889 (1961)). Our Supreme Court has explained the purpose of both cooperation clauses and the requirement that a failure to cooperate must be material and prejudicial as follows:

> The provisions are to be given a reasonable interpretation to accomplish the purpose intended, that is, to put insurer on notice and afford it an opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted, and to cooperate fairly and honestly with insurer in the defense of any action which may be brought against insured, and upon compliance with these provisions to protect and indemnify within the policy limits the insured from the result of his negligent acts. An insurer will not be relieved of its obligation because of an immaterial or mere technical failure to comply with the policy provisions. The failure must be material and prejudicial. . . . "While there is some contrary authority, the better reasoned cases hold that the failure to co-operate in any instance alleged must be attended by prejudice to the insurer in conducting the defense. Blashfield, Automobile Law, Vol. 6, sec. 4059, p. 78."

*Henderson*, 254 N.C. at 332, 118 S.E.2d at 887 (additional citations omitted). "[F]ailure to cooperate under an insurance policy is an affirmative defense upon which [the insurer] has the burden of proof[.]" *Lockwood v. Porter*, 98 N.C. App. 410, 411, 390 S.E.2d 742, 743 (1990) (citing *MacClure v. Accident & Casualty Insurance Co. of Winterthur, Switzerland*, 229 N.C. 305, 49 S.E.2d 742 (1948)). "What constitutes co-operation or lack thereof is usually a question of fact for the jury[.]" *MacClure*, 229 N.C. at 311, 49 S.E.2d at 747 (quotations and citation omitted).

Our appellate courts have reviewed few cases in which failure to cooperate under an insurance policy was at issue, and none of those cases directly addressed whether the complete unavailability of the insured constitutes a failure to cooperate. However, read together, the decisions show that some kind of affirmative action by the insured is required before a court can conclude, as a matter of law, that the insured failed to cooperate. For example, in *Lockwood v. Porter*, the insured contacted the insurer and cooperated with the insurer for a period of time before refusing to submit to the medical evaluations that the insurer required. 98 N.C. App. 410, 411, 743, 390 S.E.2d 742, 743 (1990). The action was dismissed by motion of summary judgment, and we affirmed on appeal, explaining that the

insured's "unjustified refusal to be so examined violated the coopera-tion clause of the policy and bar[red] his action as a matter of law." *Id.*, 390 S.E.2d at 743-44.

In *MacClure*, the Supreme Court reversed a judgment of nonsuit in favor of the defendant insurer based on a failure to cooperate when the insured was unreachable and thus unavailable. *MacClure*, 229 N.C. at 306, 313, 49 S.E.2d at 744, 748. The plaintiff, the estate of a child killed by a car driven by the insured, was nonsuited because the driver of the car could not be located despite "continuous efforts to locate [him] by letters written to [him] and by inquiries of persons thought likely to know [his] whereabouts[.]" *Id.* The insured worked at a traveling carnival, and the letters apparently went to his home while he was traveling. *Id.* at 306-07, 49 S.E.2d at 744. As soon as he did receive one of the letters, he responded by telegraph the next morning. *Id.* at 307, 49 S.E.2d at 745. Unfortunately, his attorneys, retained by the insurer, had filed a motion to withdraw the day before, and the trial court entered judgment by default against the insured a few days later. *Id.* The trial court then dismissed the plain-tiff's claim against the defendant insurer. *Id.* at 309, 49 S.E.2d at 746. On appeal, the Supreme Court reversed the judgment of nonsuit. *Id.* at 313, 49 S.E.2d at 748. Although the Court based its reversal on the rule that "[a] judgment of nonsuit is never permissible in favor of the party having the burden of proof upon evidence offered by him," *id.* at 312, 49 S.E.2d at 748, there are enough similarities for the case to be instructive.

In *Henderson*, the Supreme Court made the following observa-tion about the appropriateness of nonsuiting on the basis of failure to cooperate:

> Where there has been evidence tending to show collusion between the injured and the insured, courts have been careful to protect the insurer. Courts usually hold that misstatements persisted in until the trial or subsequent to the filing of plead-ings by insured requiring a shifting of ground and a new and different defense suffice as a matter of law to establish a fail-ure to cooperate. Except for these classes of cases, courts generally hold the question of materiality and prejudice is a question for the jury.

*Henderson*, 254 N.C. at 333, 118 S.E.2d at 888. Though *Henderson* does not absolutely limit a court's ability to establish a failure to cooperate as a matter of law to those situations in which the insured

has engaged in deception or collusion, it is consistent with the notion that an insured's unavailability is not *per se* failure to cooperate on the part of the insured.

The Fourth Circuit directly addressed the question of unavailability and failure to cooperate in *Continental Casualty Co. v. Burton.* Interpreting Virginia law, the court explained that, "to establish that the insured has breached a cooperation clause by being unavailable, the insurer must prove that the insured willfully breached the clause in a material or essential particular and that the insurer made a reasonable effort to secure the insured's cooperation." 795 F.2d 1187, 1193-94 (4th Cir. 1986).

Here, neither party presented any evidence that McKinnon or Hanson had ever communicated with Penn National at any stage of the proceedings, had ever received any of Penn National's communications, or had undertaken any affirmative action with respect to the suit. In fact, Penn National's evidence clearly states that McKinnon and Hanson have never communicated with Penn National, either on their own initiative or in response to communications from Penn National. Penn National received notice of the accident from CHE, and it received notice of the suit as well. Penn National was not deprived of its *opportunity* to investigate the accident by a lack of notice or misrepresentations by any of the insureds, and thus it cannot show prejudice; it has only been unsuccessful in its *actual* investigation of the accident vis-a-vis McKinnon. Nothing in the record indicates significant impairment of Penn National's ability to investigate, defend, or settle this matter. It is also not clear exactly what efforts Penn National made to contact McKinnon and Hanson, much less whether those efforts were diligent. Although both parties would certainly benefit from speaking with McKinnon or Hanson about the particulars of the accident, they appear, at this stage, to simply be unavailable. That alone is not sufficient to demonstrate a failure to cooperate as a matter of law and, thus, a breach of their duty to cooperate under the Penn National policy. It was not appropriate for the trial court to grant summary judgment on that basis alone.

Accordingly, we reverse the order of summary judgment and remand to the trial court for further proceedings.

Reversed and remanded.

Judge BRYANT concurs.

**GRECO v. PENN NAT'L SEC. INS. CO.**

[218 N.C. App. 394 (2012)]

Judge STEPHENS dissents by separate opinion.

STEPHENS, Judge, dissenting.

I respectfully dissent. As noted by the majority, summary judgment is appropriate where there is no genuine issue of material fact. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). I also agree with the majority's summary of our State's case law on cooperation clauses in insurance policies and emphasize in particular the following language:

> The provisions are to be given a reasonable interpretation to accomplish the purpose intended, that is, to put insurer on notice and afford it an opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted, and to cooperate fairly and honestly with insurer in the defense of any action which may be brought against [the] insured, and upon compliance with these provisions to protect and indemnify within the policy limits the insured from the result of his negligent acts. An insurer will not be relieved of its obligation because of an immaterial or mere technical failure to comply with the policy provisions. The failure must be material and prejudicial.

*Henderson v. Rochester Am. Ins. Co.*, 254 N.C. 329, 332, 887 118 S.E.2d 885, 887 (1961). Thus, I believe resolution of this appeal requires consideration of three questions: (1) was McKinnon an insured; (2) if McKinnon was an insured, did he fail to cooperate with Penn National; and (3) if McKinnon did fail to cooperate, was that failure material and prejudicial to Penn National's ability to defend or settle the claim brought by Plaintiff, rather than a mere technical failure? Because I believe Penn National produced uncontradicted evidence that the answer to each of these questions is "yes," I would affirm the trial court's grant of summary judgment to Penn National.

First, in an answer dated 7 October 2008, filed in the underlying tort action brought by Plaintiff against McKinnon, Hanson, and CHE, CHE admitted that McKinnon was using the trailer with the permission of CHE, the named insured and holder of the Penn National policy.[1] The policy defines an "insured" to include anyone who borrows

---

1. CHE is bound by this admission. "[J]udicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation." *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (citation and quotation marks omitted).

an insured vehicle with the permission of the named insured. Thus, there is no issue that McKinnon is an insured under the policy.

Second, Penn National has shown that it obtained current contact information for McKinnon and attempted to contact him numerous times, to no avail. In an affidavit dated 10 September 2010, Janet Fusaiotti, a senior claims representative with Penn National, stated that Penn National had attempted to contact McKinnon "on numerous occasions" starting on 14 September 2006, but that "all messages . . . went unreturned" and McKinnon "refused to respond in any way to the communications sent [] by Penn National." No evidence in the record indicates that McKinnon cooperated whatsoever with Penn National in this matter, nor does the record contain even an allegation by Plaintiff or any other party of cooperation by McKinnon. Thus, there is no issue that McKinnon has failed to cooperate with Penn National in its attempts to investigate, defend, and/or settle Plaintiff's claim.

The majority asserts that our case law establishes that "some kind of affirmative action by the insured is required before a court can conclude as a matter of law that the insured failed to cooperate." While I agree that failure to cooperate *may* be shown by an affirmative action, such as lying, nothing in the cases cited by the majority suggests that an affirmative action is *the only way* to establish failure to cooperate. Indeed, refusing to communicate with or respond to an insurance company seems to me the very definition of a "failure to cooperate."

In particular, I reject the majority's claim that *MacClure v. Accident & Cas. Ins. Co.*, 229 N.C. 305, 49 S.E.2d 742 (1948), is "instructive." Not only did the result in *MacClure* turn on proper placement of the burden of proof, rather than the evidence presented on the motion for nonsuit, *Id.* at 310, 49 S.E.2d at 746, but the Supreme Court *explicitly* cautioned against making *any type of inference* about the evidence presented at trial:

> It is the practice of this Court to *refrain*, as far as it may without destroying the clarity of opinion, *from comment on the evidence when the case is sent back for a new trial*—a rule that cannot always be strictly observed when the question involved is a nonsuit upon demurrer. We believe, however, that the case under review calls for an observance of the rule. We have refrained from passing upon the objections to the evidence because the same situation may not recur, but *the want of specific discussion has no other significance.*

**FORT v. CNTY. OF CUMBERLAND**

[218 N.C. App. 401 (2012)]

*Id.* at 312-13, 49 S.E.2d at 748 (emphasis added).

As to the third and final question, Fusaiotti's 10 September 2010 affidavit states that Penn National was prejudiced by McKinnon's failure to cooperate, because the company "has been unable to perform a meaningful investigation of the [a]ccident[.]" Further, in her deposition, Fusaiotti testified that Penn National was not able to learn "how [McKinnon and his passenger] were using the trailer, where they were going with the trailer, [or] who hooked up the trailer[.]" She also stated that Penn National had been unable to obtain this information from any other source.

Here, where the accident occurred as the result of the trailer becoming detached from the pick-up truck hauling it, I agree with Penn National that obtaining information about who attached the trailer to the truck, how it was attached, how the truck was being driven just prior to the detachment, and other related information was highly relevant—indeed, essential—to Penn National's ability to investigate, defend, and/or settle Plaintiff's claim. Thus, I would hold that Penn National has established prejudice by McKinnon's failure to cooperate. Accordingly, I would affirm the trial court's grant of summary judgment in favor of Penn National.